# CHARLESTON.

TOUDY v. NORFOLK & W. R. CO.

Submitted January 15, 1894—Decided February 3, 1894.

1. DAMAGES—RAILROAD COMPANIES.

If a horse is killed by a train at a public road crossing, and the evidence shows that the train was running at the rate of twelve miles an hour, and the horse walked onto the track twenty five or thirty yards in front of the approaching train, and the engineer at once gave two sharp whistles, and the evidence further shows that it was impossible to stop the train, considering its speed, after the horse got on the track, the killing of the horse must be regarded under the circumstances as an inevitable accident, and the railroad company is not responsible therefor.

2. RAILROAD COMPANIES—SIGNALS.

The statutory requirement of blowing the whistle or ringing the bell sixty rods before reaching a crossing is intended to warn persons who are about to use the crossing in passing over the public road, and not for the purpose of preventing dumb animals from going upon the crossing.

CAMPBELL & HOLT, for plaintiff in error, cited 15 W. Va. 628; 6 W. Va. 508; 26 W. Va. 345; Code, c. 54, s. 61; 126 Pa. 293.

ENGLISH, JUDGE:

This was an action brought by H. J. Toudy against the Norfolk & Western Railroad Company on the 26th day of September, 1892, before a justice of the peace of Wayne county, for the recovery of two hundred dollars damages for a wrong done. It appears that the damages claimed were occasioned by reason of the defendant running its engine and cars over the plaintiffs's horse in February, 1892, in Wayne county, and that the damages sustained amounted to one hundred and fifty dollars. The defendant made answer, and pleaded not guilty. The case was heard by the justice, who found for the plaintiff the sum of one hundred and fifty dollars, and gave judgment against the defendant for that amount in favor of the plaintiff and for costs amounting to three dollars and twenty five cents.

From this judgment the defendant appealed to the Circuit Court, and on the 3d day of February, 1893, the case was submitted to a jury, which found for the plaintiff, and assessed his damages at one hundred and fifty dollars, subject to the defendant's demurrer to the plaintiff's evidence, which demurrer was overruled by the court. The defendant excepted, and judgment was rendered upon said verdict, and the question we are to consider is whether the evidence set out in the demurrer to the evidence is such as entitled the plaintiff to recover.

The facts shown by the plaintiff are as follows : On the 12th day of February, 1892, the plaintiff's horse was killed at a county road crossing by an east-bound freight train, composed of an engine and tender and fifteen loaded gravel cars, running at a speed of ten or twelve miles an hour. The view of the railroad track is unobstructed from the point where it is crossed by the county road for a distance of two hundred and twenty five feet in the direction of the approaching train, but the horse did not come upon the track, according to the testimony of one of the plaintiff's witnesses, until the engine was within twenty five or thirty yards of the crossing, and, according to the testimony of another, "just ahead of the train ;" and the undisputed testimony was that the train could not have been stopped short of three hundred feet. In addition to this, the evidence of the plaintiff was to the effect that no whistle was heard sounding or bell ringing for the crossing ; but upon the other hand a witness for defendant stated positively, that he heard the whistle blown for the crossing, and it is admitted that two sharp blasts of the whistle were given before the horse was struck.

Was the killing of the plaintiff's horse in this instance the result of negligence on the part of the defendant, or was it in the circumstances of the case the result of inevitable accident?

Patterson, in his work on Railway Accident Law, at page 35, says : "Railways are not to be held liable for injuries resulting from inevitable accident—that is, accident not due in any way to negligence on the part of the railway, and such as no human foresight could avert."

Did the defendant use ordinary care in the management of its train when approaching this crossing? Now, while it is true, as shown by the evidence set forth above, that the officers in charge of the train were in a position to have an unobstructed view of the crossing where the horse was killed for a distance of two hundred and twenty five feet before said crossing was reached, the evidence shows that the track and the crossing were clear and free from obstruction of any character, and the horse did not appear on the crossing until the train was within twenty five or thirty yards of the crossing—that is, seventy five or ninety feet in front of the train; and according to the evidence it would have required a distance of three hundred feet in which to stop the train, which was running at a speed of ten or twelve miles per hour. It is obvious, then, that, although the view was unobstructed for a distance of two hundred and twenty five feet from said crossing in the direction from which the train was approaching, that fact would be of little service to those in charge of the train if two thirds of that distance had been traversed by the train before the plaintiff's horse appeared upon the crossing.

Mr. Bocock, a witness for the plaintiff, stated that he was standing at the time of the accident inside of plaintiff's palings, just forty feet from the railroad track, and about fifty feet west of the road crossing. The horse stepped upon the crossing, and was struck by the engine. That he did not hear any whistle blown or bell rung. He also stated on cross-examination, that said horse was coming along the county road and stepped upon the railroad track just ahead of the train. That the horse came on the track so close ahead of the train that from where he was standing, as soon as the horse reached it, the engine shut him off from his view; and he did not think that it would have been possible to stop the train, considering its speed, after the horse got on the track.

3 Wood, Ry. Law (Minor's Ed.) p. 1849, says: "And negligence can not be inferred from the mere fact of killing. It is not necessary that the killing should be shown to have been wantonly or willfully done, but it must appear that it was negligently done, which may be established by

showing that the engine driver did not use proper precautions to avoid accident. Thus, when animals are standing on the track of a railway, and can be seen by the persons running the train by the use of ordinary care, it is their duty to make use of the engine whistle to drive them off, and to slacken speed or stop the train if necessary to avoid injuring them. * * * But it is not always necessary that the engine driver should stop the train or slacken its speed on discovering stock on the track. Ordinary prudence requires him promptly to endeavor to drive them off by sounding the whistle, but does not require him to stop or slacken the speed of the train, when he may reasonably believe, that they will leave the track in time, and there is no cause or reason to suppose there is any risk or danger."

In a note on page 1851 it is said. "Speed and punctuality in the running of trains, as well as the safety of passengers, are paramount considerations, to which private interests must yield; and to compel a railroad company to slacken the speed of its trains or stop them, whenever an animal is seen upon the track, would impose a burden upon them which would destroy all calculations as to the arrival of trains, *etc.* and compel them often to choose between pecuniary loss and injuries to their passengers which would be unwise and unjust," citing *Maynard* v. *Railroad Co.*, 115 Mass. 458; *Railroad Co.* v. *Ballard*, 2 Metc. (Ky.) 177; *Needham* v. *Railroad Co.*, 37 Cal. 409.

Under our statute (Code, c. 54, s. 61) "a bell or steam whistle is required to be placed upon each engine, which shall be rung or whistled by the engineer or fireman at the distance of at least sixty rods from the place, where the railroad crosses any public street or highway, and to be kept ringing or whistling for a time sufficient to give due notice of the approach of such train," *etc.* Was this statutory signal given? The witness Bocock says that he did not hear any whistle blown or bell rung, and the plaintiff says no whistle was blown or bell rung on approaching this road crossing, except that when within about fifty feet of the crossing it blew two sharp blasts of the whistle,

Now, suppose it be true that the statutory requirement

was not complied with in this case, did that fact in any manner conduce to the killing of the horse? The statutory requirement that the whistle shall be blown sixty rods from the crossing which the train is approaching is not intended for the purpose of giving notice to horses and cattle running at large in the public road, but to give warning to travelers upon the highway, to persons who have the faculty of reasoning and understanding the object of the signal. This is illustrated in the case of *Improvement Co.* v. *Stead,* 95 U. S. 161, in which Justice BRADLEY, speaking for the court says:

"From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it can not be expected that it shall stop, and give precedence to an approaching wagon to make the crossing first. It is the duty of the wagon to wait for the train. The train has the preference and the right of way. But it is bound to give due warning of its approach, so that the wagon may stop, and allow it to pass, and to use every exertion to stop if the wagon is inevitably in the way," *etc.*

The warning required is obviously intended for the driver, and not for the horses attached to the wagon; and in this connection we may ask with propriety, what possible effect could the failure to give the signal required by statute have had in causing the death of the horse complained of in this case? If the whistle had been blown three hundred and twenty yards away from the crossing, can we say it would have prevented the horse from walking on to the crossing at the very moment he did? He undoubtedly was approaching the crossing at the moment the warning should have been sounded, but, if he had heard it, he could not have reasoned that the train was approaching, and he must keep off the track, so that his death was not occasioned by the failure to whistle, if the engineer failed to give such signal.

In the case of *Fisher* v. *Railroad Co.,* 126 Pa. St. 293 (17 Atl. 607) it was held. "Where the plaintiffs' mule escaped from him, and, straying upon a railroad company's track at a public crossing, was struck by a locomotive and killed, the failure of the engineer to ring the bell and

sound the whistle as the engine approached the crossing was not negligence on the part of the company, and, the mule being a trespasser, the plaintiff could not recover."

The opinion of the court in that case is short, and reads as follows: "The defendant company was sued to recover damages for the loss of plaintiff's mule. The mule was killed upon the track by one of defendant's locomotives. It was loose, and for the purposes of this case must be regarded as straying upon the track. The alleged negligence of the company consisted in not ringing the bell or sounding the whistle as the engine approached the crossing near which the mule was killed. If it was the duty of the engineer to blow the whistle as notice to the mule, I do not see why the mule should not be held to the rule to 'stop, look, and listen.' To apply rules to dumb animals which were intended only for reasonable beings is dangerously near the realm of absurdity."

This Court, in the case of *Hawker* v. *Railroad Co.*, 15 W. Va. 628, states the law upon the question involved in this case as follows, in point 3 of the syllabus: "If the killing of the cattle on the railroad track were, under the circumstances, an inevitable accident, the railroad company is not responsible therefor, though the engineer used no precaution, such as blowing the whistle, or doing anything else. If no precaution could possibly, under the circumstances, have avoided the accident, the failure to use any precautions will not render the railroad company liable."

In the case of *Flattes* v. *Railroad Co.*, 35 Iowa, 191, it was held.

"Where, in an action against a railroad company to recover the value of stock killed on its station grounds, the evidence fails to show negligence of the company or those in charge of the train, a verdict of the jury against it will be set aside.

"(2) That the rate of speed was not slackened nor the whistle sounded is no evidence of negligence when it appears that such efforts would have been, under the circumstances, unavailing to prevent the injury."

Now, from the evidence in the case under consideration as to sounding the whistle before reaching the crossing as

required by statute, the plaintiff on cross examination states that he would not swear positively that no whistle was sounded or bell rung by the train upon approaching the road crossing, but that he heard no bell rung or whistle sounded except two shrill blasts of the whistle, indicating, "Down brakes!" when the train had nearly reached the crossing. The witness Bocock also states that he did not hear any whistle blown or bell rung. The plaintiff however did hear the two sharp blasts, when the train was near the crossing, which demonstrated that one may hear when the other does not; and Mr. Wyant, a witness for the defendant, who does not contradict the plaintiff's witness says; "This train gave two shrill whistles just before striking the horse, and I heard this train besides whistle for the road crossing where the horse was killed."

Starkie, Ev. (4th Ed.) p. 867, illustrates the distinction between positive and negative evidence as follows: "If one witness were positively to swear that he saw or heard a fact, and another were merely to swear that he was present, but did not see or hear it, and the witnesses were equally trustworthy, the general principle would, in ordinary cases, create a preponderance in favor of the affirmative; for it would usually happen that a witness who swore positively, minutely, and circumstantially to a fact which was untrue would be guilty of perjury, but it would by no means follow that a witness who swore negatively would be perjured, although the affirmative were true. The falsity of the testimony might arise from inattention, mistake, or defect of memory. And the author illustrates it by two persons in the same room for the same period, and one of them should swear that he heard the clock strike during that time, and the other should swear that he did not hear it; it is possible that the fact might be true, and yet each might swear truly.

There seems, however, to be no controversy about the fact that two sharp whistles were given about fifty feet from the crossing. This is stated by the plaintiff himself, and the evidence shows that the horse stepped onto the track twenty five or thirty yards ahead of the engine—say that was about eighty feet. Then the train was running at the

rate of twelve miles an hour—that is, a mile in five minutes, and about eighteen feet in a second—so that in less than two seconds after the horse appeared on the crossing the two sharp whistles were sounded according to the plaintiff's own statement, so that in the circumstances, the train was too close upon the horse to be stopped. It struck the horse in three seconds from the time the whistle sounded at the rate of speed it was running, and the accident was inevitable. The men on the train did all that was required of them, and the evidence discloses no negligence on their part.

I am therefore of opinion that the Circuit Court erred in overruling the defendant's demurrer to the plaintiff's evidence, and in entering judgment for the plaintiff.

Said judgment is therefore reversed, and this Court, proceeding to render such judgment as the court below should have rendered, doth give judgment for the defendant with costs and the costs of this writ of error.