# CHARLESTON.

HUFF *v.* CHESAPEAKE & OHIO RY. CO.

Decided April 14, 1900.

1. RAILROAD TRACK—*Trespass Thereon.*

    A person using a railroad track as a footpath for his own con- venience, elsewhere than at a lawful crossing, and injured by a train while so doing, cannot recover damages of the railroad company, unless it be guilty of wanton or gross negligence. *Spi- cer* v. *Railway Co.,* 12 S.E. 553, 34 W. Va. 514, 11 L. R. A. 385. (pp. 46, 47).

2. SIGNAL—*Whistle—Bell for R. R. Crossing.*

    The statute (Code, chapter 54, s. 61), requiring the bell to be rung or a whistle to be blown at crossings, is designed for those passing over the tracks at such crossings, not for those using the track elsewhere for their convenience as a footpath. *Spicer* v. *Railway Co.,* 12 S. E. 553, 34 W. Va. 514, 11 L. R. A. 385. (p. 49).

Error to Circuit Court, Kanawha County.

Action by William Huff against Chesapeake & Ohio Railway Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

E. W. WILSON and A. B. LITTLEPAGE, for plaintiff in error.
SIMMS & ENSLOW, for defendant in error.

BRANNON, JUDGE:

William C. Huff brought an action in the circuit court of Kanawha County against the Chesapeake and Ohio Railway Company, and upon a demurrer by the defendant to the plain-

tiff's evidence, judgment was given for the defendant, and the plaintiff appeals.

Huff was at Montgomery, and walked down the track from that point to Handley, in company with two other persons. They were in what is called the "yard" of the railroad company at Handley, where there were numerous railroad tracks, and where numerous trains passed east and west on that great railroad, and there was a shifting engine, pulling cars and trains here and there at all hours. This yard was in constant use by the railroad company in the transaction of its business. Between eight and nine o'clock of the night of March 24, 1895, when Huff and his companions had reached a point close to the roundhouse, where engines were housed, they met an east-bound freight train, and stepped out of its way, and, when it had passed them about half its length, the yard engine, backing into the roundhouse on another track alongside of that occupied by the freight train, ran over Huff, who was on its track, cutting off one leg and the foot of another leg. It thus plainly appears, and is not questioned, that when Huff received his injury he was making use of the track as a footpath on ground owned and occupied by the company, and absolutely necessary for it in the transaction of its business, and ground which it was necessary that the company should have absolute control over. Thus, Huff was, in every sense, a trespasser on that ground, without the slightest color of right to be there. Several hundred yards from the point of accident the company had placed signal boards of warning, telling everybody to keep off the tracks of that yard, as trains might be expected in it at any time, and that it was a dangerous place. But who would want any signal board of such warning? That yard, that was full of tracks, constantly in use by passing trains, and in switching, making up, and handling trains, and dotted with switch lights showing the various tracks. A railroad track anywhere is alone a warning of great danger; but how much more dangerous is that yard at Handley, full of tracks, trains, and engines at all times or at any time? We may safely say that scarcely anywhere on earth, in broad daylight, could a more dangerous place be found; but how much more dangerous still between eight and nine o'clock of a dark March night? Huff went right into the jaws of death, with his eyes and senses open, and thus committed an act of the grossest negligence,—an act full of danger not only, but full of suicidal rashness, on his part.

Our cases decided this case for the defendant. In *Spicer* v. *Railway Co., 34* W. Va. 514, (12 S. E. 553), 11 L. R. A. 385, we held that "a person using a railroad track as a footpath for his own convenience, elsewhere than at a lawful crossing, and injured by a train, cannot recover damages of the railroad company, unless it be guilty of wanton or gross negligence." The many authorities referred to in that case will support this position. Shear. & R. Neg. s. 480, says: "The use of a railroad track, cutting, or embankment, not occupying a highway, or being at a lawful crossing of public roads or highways, is exclusively for the company and its employes; and it is therefore an act of negligence to travel laterally upon it, even though it is entirely uninclosed and opens on a highway." There was the public turnpike road a few yards distant from the track, leading to the point to which Huff was going. Why did he not use it? Situated as Huff was, having entered upon the company's property voluntarily and against its will, he was bound, for motives of self-preservation, to keep the most astute lookout. That late and great work, Elliott on Railroads (section 1258), says: "If one who is not an employe, without the knowledge or consent of the company, goes into its yard, which is interlaced with tracks, upon which engines and cars are being switched and changed, he must use care commensurate with the peril in which he has placed himself, and the company owes him no duty except not to injure him willfully, or by negligence, after its employes see his danger and inability to escape in time to prevent such injury by the exercise of due care. The switch yard of a railroad company is usually even a more dangerous place than the right of way, where there is but a single track, and, as it is likely to be in continuous use by the company in switching, storing, and repairing cars, making up trains, or the like, there is perhaps still less reason for implying a license or invitation to strangers to use such premises than in the case where there is but a single track." Huff says he looked back to see if any train was coming. Where is the plausibility in that statement, when we know from his own evidence that the freight train had a brilliant headlight flooding with light the track on which that yard engine was slowly backing into the roundhouse, tender in advance of it, the roundhouse being only a few yards away. The freight train had not yet passed him its full length, when he was struck, and it is a strong probability, arising, not from any oral testimony of the

company, but from the nature of the case as stated by Huff himself,—a physical or natural probability,—that, if he had shown the slightest care, he would have seen that engine, because he could have seen it. At any rate, suppose he looked, and did not see it; is the company to blame for that? It was his misfortune, not the company's fault. The plain truth is he could and should have seen that engine. He was simply carelessly walking forward on that track. He and his companions had been drinking. He did not even walk on the smooth ground between the tracks. He took the dangerous railroad track for his path.

What duty did the company owe Huff? If it broke no duty, how can we mulct it in damages, even to repair this unfortunate man's calamity? The only duty the company owed him was not to wantonly or willfully injure him. Had its employes seen him in time to save him, it would have been their duty to use ordinary care to do so. But how could they see him that dark night, when the engine was backing? And, even if they had seen him, they might presume that he would get off the track. Beach, Contrib. Neg. s. 202, says: "As a general rule, a trespasser on the track is held to be there at his own peril. He must keep himself informed of the approach of trains from any direction, and, in case of injury, will be held guilty of such contributory negligence that he cannot recover from the railway, notwithstanding concurrent negligence on their part." Section 203 says: "The liability of a railroad company to a trespasser on its tracks must be measured by the conduct of its employes, after they became aware of his presence there, and not by their negligence in failing to discover him; for, as to such negligence, the contributory negligence of the trespasser will defeat a recovery." In *Bias* v. *Railway Co.,* 46 W. Va. 349, (33 S. E. 240), JUDGE DENT said that, though the company should keep a proper lookout "for helpless trespassers" on the track, yet, "if such trespasser is not helpless, the duty of keeping a lookout devolves upon him as well as the trainmen, and, if an accident happens by reason of their mutual negligence, no recovery can be had." But, I ask again, where is the negligence of the company? Could the hands see in front of the tender that dark night? Was the company to keep a watchman on that tender? But it is said they should have rung the bell. Though this yard was in a town of five hundred people, yet there was no highway there, and the engine was slowly backing

into the roundhouse, a few yards off. Where is the law that requires a bell to be rung at that place? *Spicer* v. *Railway Co., supra,* and Code, chapter 54, section 61, tell us that a bell is to be rung only at crossings, for those passing over the track at such crossing, "not for those using the track elsewhere, for their convenience as a footpath." It is said there should have been a lamp on the tender. Where is the law that required it in that yard?

It is said that Huff was going to the ticket office to buy a ticket. That makes no difference. That did not authorize him to use the track as a footpath. He was none the less a trespasser for that reason.

It is urged upon us that people were accustomed to walk on the track in that yard. If so, it was against the will of the company. It had taken the precaution to post warnings and protests against the use of its yard by pedestrians, and with no plausibility can it be said that the use of it by them was permissive on its part. Could it be required to keep a company of guardsmen there to expel trespassers from the track? We know from general observation that in no other way can a railroad company avoid such trespassing. But even say that such use was permissive; what, then, is the law? Elliott, R. R. s. 1250, speaking of those who are real licensees to use a railroad track as a footpath, says: "The better rule is that the licensee takes his license subject to its concomitant perils, and the licensor owes him no duty, except to refrain from willfully or wantonly injuring him. * * * It seems to us that the only duty which it owes to such person, whether trespassers or bare licensees, is not to willfully or wantonly injure them, but to use reasonable care to avoid injury to them after their danger is discovered. It seems to us that some of the courts beg the question when they say that the company must keep a lookout, and use care to discover persons on the track where they may be expected, although not at a crossing or the like. Is the company bound to expect them at any such place, and to run its trains with reference to them? Is not the assumption that such a duty rests upon the company an undue assumption? The just and reasonable assumption would seem to be that they will not be on the track when trains are passing, or, if they are, that, as they take their license subject to concomitant perils, they will look out for their own safety, without special warning or change by the company in the manner of using its road, and that it may act on this assumption until it discovers their danger."

But why talk about the law, where there is a license by the company, when in this case there was not only no license, but protest against it publicly made? The mere fact that people often trespassed on the track, and the company did not stop them, does not imply consent on the part of the company to its use as a footpath, and will not create any right in the public to use it, as shown in *Spicer* v. *Railway Co., supra.* "Mere passive acquiescense does not amount to license." *Bancroft* v. *Railroad Corp.,* 97 Mass. 275; *Railroad Co.* v. *Sherman's Adm'x,* 30 Grat. 602; *Railroad Co.* v. *Harman's Adm'r;* 83 Va. 577, (8 S. E. 251). "The acquiescence of a railroad company in the use of its track by the public as a highway does not confer a right or license to use it." *Brown's Adm'r* v. *Railroad Co.,* 97 Ky. 228, (30 S. W. 639). But *Nuzum* v. *Railway Co.,* 30 W. Va. 228, (4 S. E. 242), is principally relied on to support this action. In no view does it do so. In that case the track ran over ground constituting the public wharf on the Ohio river, in the populous city of Wheeling. It was a public highway, where Nuzum and everybody else had a right to be; whereas in this case Huff had no right at all to be where he was. In that case the company ran, at the rate of eight or ten miles an hour, over that public wharf ground, a number of cars detached from an engine, without bell or whistle of warning, and without anybody on the cars to warn people. Furthermore, that is an exceptional case. The court did not decide absolutely that the company was liable, though I think it clearly was, under the circumstances. The court below excluded the plaintiff's evidence, and this Court said that it was not necessary to decide that the facts were sufficient to prove negligence in the company to justify a recovery, nor to determine whether the plaintiff was barred from recovery by his contributory negligence in walking on the track, and said that the real question before the court was whether the lower court was authorized to withdraw the evidence from the jury, and held only that it erred in so doing. Seeing no error in the judgment of the circuit court, it is affirmed.

*Affirmed.*