# CHARLESTON.

### Harvey Coal & Coke Co. *v.* Chesapeake & Ohio Ry. Co.

Submitted June 10, 1910.   Decided April 25, 1911.

Railroads—*Injury to Animals on Track—Evidence.*

> Judgment below reversed, verdict set aside, and a new trial awarded for want of sufficient evidence showing actionable negligence of defendant in killing plaintiff's mules.   Applying *Toudy* v. *Norfolk & W. R. Co.,* 38 W. Va. 694, and *Lovejoy* v. *C. & O. Ry. Co.,* 41 W. Va., 693.   (p. 232).

Error to Circuit Court, Fayette County.

Action by the Harvey Coal & Coke Company against the Chesapeake & Ohio Railway Company. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*Simms, Enslow, Fitzpatrick & Baker,* for plaintiff in error.
*Dillon & Nuckolls,* for defendant in error.

Miller, Judge:

The verdict and judgment below, on appeal, by defendant, from the judgment of a justice, was for three hundred dollars, interest and costs, damages alleged to have been sustained by plaintiff, by the killing by defendant of a pair of mules astray on its railway tracks.

All questions of error presented are covered by defendant's motion, denied by the court below, to set aside the verdict and grant it a new trial.

The sole question is, was the law properly applied, and the verdict warranted by the facts proven? The complaint was that defendant negligently ran over and killed the mules, in the early morning of January 18, 1909. The facts proven are, that plaintiff owned and operated a coal mine on the Loop Creek branch of defendant's railway, in Fayette County. It employed mules and kept them in its stable, located on the side of the railway opposite the mine, and from seventy to ninety feet distant therefrom, and about three hundred feet west of a public road crossing the track, and about four hundred feet west of a curve in the track going up the creek. The stable and any object on the track opposite it could be seen in the day time by trainmen, after rounding the curve going west. The mine was usually reached from the stable by following a road way along the defendant's right of way leading to the public road, and then crossing over the track on the public road. Sometimes, however, drivers crossed the track directly opposite the stable. On this morning, Roach had gone to the stable, a little after seven o'clock, gotten the mules, and had started to the mine in the usual way, but was called back by the stable boss to take along another team of mules for another driver, who was late. Roach left his mules, unguarded and unhitched, standing in front of the stable, while he went around on the side of the stable to get his dinner bucket and lamp. Left alone as they were, the mules went directly to the track, got on it and started up the track in the direction of the public road and the approaching engine, when they were almost instantly hit and killed by the locomotive, in charge

of an engineer and fireman, running at the rate of about eight miles an hour. Roach says, the mules started right across in front of the train, had just got on and started up the track, about fifteen feet, when the engine struck them; and they were almost instantly killed. This witness did not see the engine hit the mules; he was watching the engine, he says, and waving his light to make them stop. He swears that when he came around in front of the stable the engine was on the crossing where he could see it, and that he waved his light at them; that if the engineer had been looking down the track when he waved his light, he could have seen the mules. But he does not say the mules were then on the track. Cumbo, another driver, and a witness for plaintiff, says: The mules went straight across from the stable, and that about fifty feet up from where they got on the track they were struck by the engine. He was standing just opposite the point on the track where the engine hit the mules. He says, he could plainly see the engine from the point where he was standing, that it was light enough to see. He thinks the engineer could and should have seen the mules; but he admits that, standing right opposite, and within fifty feet of the place where the engine hit the mules, and saw them start across the track, he did not watch them on the track, as he thought the driver was with them. If in such close proximity, he did not see, or thought the mules were in charge of the driver, should not the engineer and fireman be excused, for not observing the mules on the track without a driver? Dixon, superintendent of plaintiff's mines, who measured the distance, says that it was from two hundred to two hundred and fifty feet west of the public crossing to the point where the mules were killed, seven rail lengths from the frog. And he would think, he says, that an engineer ought to be able to see from two to two hundred and fifty feet before reaching that point. This witness was asked by plaintiff's counsel, whether he knew within what distance an engineer could stop a single engine, without cars, going at the rate of six or eight miles an hour, and he answered that he did; but for some reason he was not asked to state the distance. It plainly appears from all the evidence, though the witnesses do not exactly agree as to the distance from the public road, that the mules were struck by the engine at from fifteen to fifty feet from the point where they went on defendant's track.

The only evidence offered by defendant, was that of Neil, the engineer, and R. L. Dixon, the brakeman or fireman, in charge of the engine. Neil says, referring to the mules, "They were right in front of the stable." "We were coming in that morning just about 6:45, about that time, and the brakesman called my attention that way. I had struck something, and I blew the whistle for the station, and just as I blew the whistle, the brakesman caught me by the arm and said I had struck something." He also says, that he was in his proper place, looking out ahead, and that he did not see the mules, and as a reason for not seeing them, further says: "Well, there were a good many miners down there with bank lamps on, between the railroad and the stable and it seems to me from where the first mule was laying, they come right up behind this trestle that they use to haul feed down to the stable on and they were struck just as they were crossing the track." He states, moreover, that the morning was dark and smoky from the coke ovens, that it was just before day; that the cut east of the crossing was about three hundred and fifty feet from where the mules were killed; that the curve was to the left, and he on the right side of the engine going west, and his vision thereby obstructed. His head light was not a very good one, but he says he does not think that a good one would have enabled him to see much better on account of the miners lights, as they blinded him. He could see, he thinks, about one hundred feet ahead of his engine, and the fireman about the same distance. Dixon, the fireman, says: "I was looking out for obstructions. * * * I saw the mules just before we hit them. * * I could not tell you whether they were standing still or coming ahead, or what they were doing. It was dark, and the light from the coke ovens was shining over there right in my face." Asked how far away the mules were when he first saw them, he says: "They were ten or fifteen feet to the best of my knowledge." Considerable reliance is placed by plaintiff on the testimony of this witness on cross-examination, which implies that the mules had gone up the track to within fifty feet of the crossing, when they were struck by the engine, that is that they had traveled from the point where they went on the track, opposite the stable, up the track about two hundred and fifty feet; thereby disagreeing with all the plaintiff's witnesses, and the testi-

mony of the engineer, who says the mules were struck just as they were crossing the track. The witness had been asked: "How far from the stable up toward the crossing were the mules hit?" He evidently meant to say about fifty feet; but whatever the fact may be, he does say that he is not sure about this statement. But if the fact was, that the mules were struck within so short a distance from the railroad crossing, we do not see that this fact would make a better case for plaintiff. It would destroy very much the force of the testimony of its witnesses, to the effect that the mules could have been seen for a distance of three hundred feet from the crossing, before they were hit by the engine.

In our view of this evidence it wholly fails to make out a case of negligence, and liability on the part of the defendant company. In what particular does it show defendant negligent? The testimony of the plaintiff's own witnesses is that the mules went directly from the stable onto the track, and in front of the engine, and were struck within fifteen to fifty feet from the place where they got on the track. Even if the trainmen could have seen, or did see the mules in front of the stable, or going in the direction of the track, they may have thought, as did witness Cumbo, who was within fifty feet of them, that they were in charge of the driver, and would be taken care of; and that plaintiff's own servants, standing at the stable, in plain sight of the approaching engine, would not allow them to go upon the track and be killed. We judicially know that it is still dark at 6:45 or 7:00 o'clock A. M. in the month of January. We are persuaded also that the light and smoke from the coke ovens, and the miners' lights, were well calculated to confuse and obscure the vision of the trainmen at that early hour. It would be carrying the doctrine of negligence very far, we think, to hold the defendant liable on this evidence. We think the case one of inevitable accident, and that it is controlled in its facts, and the legal principles applicable, by *Toudy* v. *Norfolk & W. R. Co.,* 38 W. Va. 694; *Lovejoy* v. *C. & O. Ry. Co.,* 41 W. Va 693, and other cases The rules and principles of these cases require a reversal of the judgment below, and the awarding of a new trial to defendant.

It is urged by the defendant that, as the court below denied

its motion to exclude plaintiff's evidence, and rejected its instruction number one to the jury to find for the defendant, which was error, we should enter judgment here for the defendant, notwithstanding the verdict. But we can not clearly see that a different case may not be made on a new trial. In such cases our practice, declared in recent decisions, is to simply reverse the judgment below, and award a new trial. Accordingly, the judgment below will be reversed and a new trial awarded.

*Reversed and Remanded.*