# CHARLESTON.

HANGER BROTHERS v. CHESAPEAKE & OHIO RAILWAY COMPANY.

Submitted February 28, 1911.    Decided January 23, 1912.

1. RAILROADS—*Operation—Injuries to Animals on Track—Care Required.*

    It is negligence *per se* for a railroad company, in the night time, to run an engine backwards over its main track without a proper headlight on the tender sufficient to enable the engine men, in the exercise of reasonable and ordinary care, to see ahead a reasonable distance, so as to avoid doing injury to dumb animals astray upon the track.    (p. 214).

2. NEW TRIAL—*Sufficiency of Evidence.*

    Where a railroad company in so operating an engine, in the night time, runs over and kills a horse astray upon its track, and the evidence is such that the jury may reasonably infer

that had there been a proper headlight on the tender in front of the moving train the enginemen, in the exercise of due and reasonable care, would probably have discovered the horse on the track in time to avoided injuring him, the question of negligence is one of mixed law and fact for the jury, and the court should not for want of sufficient evidence to support it set aside a verdict in favor of the owner of the horse, and award defendant a new trial. (p. 216).

Error to Circuit Court, Fayette County.

Action, by K. E. Hanger and others, partners under the firm name of Hanger Bros., against the Chesapeake & Ohio Railway Company. Judgment for defendant, and plaintiffs bring error.

*Reversed and Entered.*

*Osenton & Horan,* for plaintiffs in error.

*Simms, Enslow, Fitzpatrick & Baker,* for defendant in error.

MILLER, JUDGE:

Plaintiffs seek reversal of the judgment below, on appeal from the judgment of a justice, setting aside the verdict of the jury in their favor, for one hundred and seventy-five dollars, and awarding defendant a new trial.

The action begun before a justice was for damages for alleged negligence of defendant in killing plaintiffs' horse.

One of the questions presented in the court below, on the evidence, and by instructions to the jury proposed by defendant, and in the petition filed in this Court, is whether the alleged negligence, if any, in killing the horse was that of the defendant or of the White Oak Railway Company, operating the engine and cars that killed the horse.

The evidence shows that the railway track where the killing occurred, the engine, and at least one of the cars belonged to the defendant company, and that the movement of the train over said track was controlled by the train dispatcher of defendant company at Hinton. There is evidence that after the horse was killed servants of the defendant company took charge of its carcass and buried it, and that when other animals had been killed on the same branch the defendant settled the damages. The point does not seem to be relied on in argument here and we think we may properly regard it as having been abandoned.

. The main question presented is, whether it is negligence *per se* for a railroad company in the night time to run an engine backwards over its main track, as was done in this case, without a proper headlight on the tender sufficient to enable the enginemen, in the exercise of reasonable and ordinary care, to see ahead a reasonable distance and to avoid doing injury to dumb animals astray upon the track? It is conceded that the horse was not killed at a public crossing, and that it was a trespasser on the defendant's right of way, and that defendant owed it no duty except to observe ordinary care to not wantonly and willfully run it down and kill it. That this measure of duty is imposed by law upon a railway company with respect to stock astray upon its private right of way is fully established by prior decisions of this Court. *Layne* v. *Ohio River R. Co.* 35 W. Va. 439, and the cases cited and reviewed therein.

This and other cases, with no less exactness, we think, require of a railroad company and its servants operating its trains, that they use like ordinary care in providing the means of discovering such stock on its track. Does this rule require of a railroad company operating trains at night, to equip its engines or cars with reasonably sufficient headlights and other appliances necessary to avoid doing injury to trespassing animals? It would clearly be negligence giving a passenger injured thereby right of action. But will it give right of action to the owner of animals killed by such negligence? By defendant's instruction number 3, given, the court below, in substance, told the jury that the railway company was not negligent in not having a headlight on the engine which ran over and killed plaintiffs' horse, unless the killing took place at a public crossing. As it was not killed at a public crossing the practical effect of the instruction, therefore, was to tell the jury that defendant was not negligent, and not liable. The jury evidently did not regard the instruction, for they found a verdict for plaintiffs notwithstanding the instruction.

In discussing the rule requiring of a railway company ordinary care and precaution to discover animals on its track and right of way, 3 Elliott on Railroads, section 1205, supported by numerous decisions cited, says: "It is held to be the duty of the company to use care to equip its locomotives with such head-

lights as would render a lookout effective." And in section 1206 this writer says: "The company is bound to use ordinary care to prevent injuries to animals and where ordinary care requires the use of signals the company may be guilty of negligence in omitting them although they are not required by statute." In *Layne* v. *Railroad Co., supra,* it is also held that the servants of a railway company are "equally bound to adopt the ordinary precaution to discover danger as to avoid its consequences after it becomes known." Our case of *Kirk* v. *N. & W. R. Co.,* 41 W. Va. 722, says: "If the servants of a railroad company in charge of a train, by exercise of ordinary care, can see and save domestic animals which have wandered on the railroad, it is their duty to do so; but this duty must be exercised consistently with the paramount duties they owe to the passengers on the train under their charge." What rule of reason or policy then could excuse a railway company, operating trains at night, from equipping its engines with proper headlights to aid its servants in the performance of their duty? If it is the duty of its servants by the exercise of ordinary care, to see and endeavor to save such animals, astray upon its track, there must certainly be a corresponding duty on the part of a railway company to use ordinary care in providing its trains with sufficient headlights in aid thereof. The proposition seems so fundamental and self evident as not to require further elaboration. It is sustained not only by the authorities already referred to, but by 33 Cyc. 1218, and cases cited in note 57.

As opposed to this rule defendant's counsel cite and rely on *Melton* v. *Railroad Co.,* 64 W. Va. 168, point 2 of the syllabus, saying: "Signals or lights or watchmen are not required on a backing train elsewhere than at public crossings to warn trespassers using the track for their own convenience as a foot path." Does this rule, applicable to persons using the track, affirmed in this and in the prior decisions cited, apply also to dumb animals? In *Melton* v. *Railroad Co.,* the fact is emphasized that it was not claimed that the trainmen saw or could have seen Myers, the deceased, before hitting him with the backing engine. In *Huff* v. *C. & O. Ry. Co.,* 48 W. Va. 45, the same rule was applied to a trespasser in the yards of the defendant company. It is there held that unless guilty of wanton

or gross negligence a railroad company can not be held liable in damages to persons so trespassing. In the present case the horse was not injured by a backing engine and tender, in the yards of the defendant, but outside, on the main track, and by an engine being operated in that way, in hauling a regular passenger train, and it was a dumb animal, not a live sentient person, of mature years, that was killed. Our decisions hold, with respect to dumb animals, as to helpless, insane or infant persons, that a railroad company owes a duty to the owner to keep a careful lookout ahead to discover them upon the track and to use ordinary care to avoid injuring them. Besides the cases already cited, see cases cited in 11 Cyc. Dig. Va. & W. Va. Reports, pp. 586-599.

With respect to persons of mature years, possessed of all their faculties, a railroad company and its trainmen have the right to assume unless circumstances indicate the contrary, that they will hear the approaching train and get out of the way in time to avoid injury. Not so with respect to dumb animals and helpless persons. And as we have already said this duty must also include the corresponding duty to provide and keep in order sufficient headlights.

Our conclusion, therefore, is that a railroad company, in operating its train in the night time over its main tracks owes a duty to the owner of domestic animals to provide and keep installed and in order sufficient headlights to enable its trainmen by the exercise of reasonable and ordinary care to see them on the track in time to avoid injuring them, and that it is negligence to omit this duty, for which an action will lie, if its omission be the proximate cause of the injury.

If such be law the remaining question is, did the court err in setting aside the verdict and awarding defendant a new trial? The evidence shows that there was a headlight on the tender of the backing engine, but that it had been broken, was out of repair, and that in place of having it repaired, the trainmen were using an ordinary train lantern hung out on the drawhead of the tender. The evidence is that this lantern did not enable the trainmen to see ahead for more than from twelve to fifteen feet, while with a proper headlight they could have seen about a hundred yards ahead, and that the track was straight for some

four or five hundred yards back from where the horse was struck, with nothing intervening except the darkness of the night to obstruct their view, and that the distance from the point where the horse apparently went upon the track to the place where it was killed is about one hundred and seventy-five feet, a bridge or culvert intervening showing evidences of the horse's foot having slipped through the ties on the bridge. The trainmen say they were looking ahead but did not see the horse. At what rate the train was traveling and within what distance it could have been stopped is not clearly shown by the evidence. Defendant's counsel claim in their brief that the train was moving at about the rate of twelve miles an hour. We know from the evidence that the train was moving backwards on a dark night with a light in front that would not enable the trainmen to see more than from twelve to fifteen feet ahead, and we may safely conclude that they were not going at a very great rate of speed.

On this evidence was the court below justified in setting aside the verdict? Defendant's counsel rely on *Toudy* v. *N. & W. R. Co.*, 38 W. Va. 694, *Maynard* v. *N. & W. R. Co.*, 40 W. Va. 332, *Lovejoy* v. *C. & O. Ry. Co.*, 41 W. Va. 693, and *Kirk* v. *N. & W. R. Co.*, 41 W. Va. 722, and characterize the killing of the horse in this case as one of inevitable accident, for which under these decisions, defendant can not be held liable. They say that the horse was killed because it was a very dark rainy night, and the vision of the trainmen obscured thereby, and by the fact that the lantern on the tender did not throw the light far enough ahead to enable them to see the horse in time to avoid hitting and killing it. This proposition as we see excludes the idea of negligence in failing to provide a suitable headlight which we hold to be negligence *per se*. Both engineer and fireman swear they were looking ahead at the time the horse was evidently struck by their train, but did not see him, and to that extent performing their duty to the owner of the horse. Why did they not see him on a straight track of some four or five hundred yards in time to avoid killing him? The jury might justly have inferred that it was because of the absence of a sufficient headlight. The question was one of mixed law and fact peculiarly within the province of the jury, and not one for

the court, independently of the jury, to decide. As was said by Judge SNYDER in *Johnson* v. *Railroad Co.*, 25 W. Va. 570, apropos to this discussion: "If the engineer had discovered them (the horses) promptly as he should and would have done had he exercised due care, he could, by blowing his whistle and stopping his train, have, perhaps, prevented any collision and saved the horses. This was at least a probability for the consideration of the jury." So we may say in the case, if the engine had been provided with a sufficient headlight, the trainmen, who claim to have been looking ahead, as it was their duty to do, consistent with their paramount duty to the passengers, would in all probability have seen the horse of the plaintiff in time to have avoided killing him. At all events the probability was one for the consideration of the jury, and which they evidently resolved, as they had the right to do, in favor of the plaintiff.

Our opinion, therefore, is to reverse the judgment below, and enter judgment here in favor of plaintiff for the amount of damages as found by the verdict of the jury, with costs incurred here and in the court below, and it will be so ordered.

*Reversed and Entered.*