# CHARLESTON

## ROBBINS *v.* RAILROAD COMPANY.

Submitted June, 19, 1907.   Decided November 12, 1907.

1. RAILROADS—*Killing Stock—Action—Pleading.*
    The form of declaration laid down in Hogg's Pleadings and Forms, page 343, against a railroad company "for the negligent killing of plaintiff's horse while on its track" is approved as sufficient on demurrer without alleging more particularly than therein stated acts of negligence of omission or commission. (p. 537.)

2. PLEADING—*Declaration.*
    The object of the declaration is to set forth the facts which constitute the cause of action, so that they may be understood by the defendant, by the jury who are to ascertain the truth of the allegations and the court who is to pronounce judgment. (p. 537.)

3. RAILROADS—*Killing Stock—Pleading.*
    An allegation of negligence in such declaration implies a duty on the part of the defendant as well as a breach of that duty. (p. 527.)

4. SAME—*Care Required.*
    It is the duty of the servants of a railroad company in charge of its trains to keep a lookout for stock upon the track and if stock

happens to be on the track and is killed by the train the company is liable for the value of the stock so killed if the killing could have been avoided by the exercise of ordinary care; that is, if it could have been seen in time to have avoided the killing by the use of ordinary care, though it may not actually have been seen in time to avoid the killing.   (p. 538.)

Error to Circuit Court, Wetzel County.

Action by G. D. Robbins against the Baltimore & Ohio Railroad Company.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

THOS. P. JACOBS, and F. V. IAMS, for plaintiff in error.

E. L. ROBINSON and GLEN SNODGRASS, for defendant in error.

McWHORTER, JUDGE:

This was an action of trespass on the case for the killing of a horse by the defendant on its railroad track.   The defendant demurred to the declaration which demurrer was overruled, the plea of not guilty entered, a jury impannelled and after the evidence was all in the defendant demurred to the evidence in which the plaintiff joined.   The jury returned a conditional verdict in favor of the plaintiff for $300.00.   The defendant moved the court to set aside the verdict, which motion was overruled and the court took time to consider of its judgment of the demurrer to the evidence, and on the 24th day of October, 1906, the court overruled the demurrer to the evidence and entered judgment upon the verdict.

Plaintiff in error seems to rely strongly upon its demurrer to the declaration.   The declaration contains but one count and the same has frequently been held by this Court to be sufficient.   It is contended that no facts are averred in the declaration tending to show negligence in any degree and that no act of negligence was alleged.   The declaration alleges that " the said defendant then and there, by its said servants and agents, so improper and negligently used, managed, run and operated its said locomotives and cars that by and through the negligence, carelessness and improper conduct of the said defendant, by its servants and agents in that behalf, the locomotive and cars of the said de-

fendant then and there ran upon and against the said horse of the said plaintiff, and thereby then and there killed the said horse; and the said horse of the said plaintiff thereby then and there became and was rendered of no use or value to the said plaintiff." Here is a distinct allegation that the defendandant by its servants, &c., carelessly and negligently ran its locomotive and cars upon and against the said horse of the plaintiff and thereby killed the said horse. This is clearly a distinct act of negligence to be complained of and not simply a conclusion of the pleader, as contended.

Counsel for plaintiff in error seem to rely most strongly upon the case of *Snyder* v. *Electrical Co.*, 43 W. Va. 661, which it is claimed modifies the rule heretofore established where it is said at page 663: "I take it that it would not be enough simply to say that the company negligently killed a horse." The declaration under consideration goes further and says how the horse was negligently killed by the defendant and its servants, to-wit: by carelessly and negligently running its locomotive and cars upon the horse; and this allegation of negligence clearly implies the duty of the defendant as well as the breach of that duty.

In Hogg's Pl. & Forms, section 140, it is said:

"It is well settled and may be laid down as a general rule, that in a declaration charging negligence it is not necessary to state the particular acts which constitute the negligence. A declaration will be treated as alleging by implication every fact which can be implied from its averments by the most liberal intendment. The object of the declaration is to set forth the facts which constitute the cause of action, so that they may be understood by the party who is to answer them, by the jury, who are to ascertain the truth of the allegations, and the court who is to pronounce judgment."

In *Railway Co.* v. *Lawton*, 55 Ark. 428, at page 433 the court, speaking through Judge Hemingway, says: "The word 'negligence' implies a duty as well as its breach, and the fact can never be found in the absence of a duty."

In *Blaine* v. *Railroad Co.*, 9 W. Va. 254, this declaration is held to be good on demurrer, and the declaration at bar is in strict conformity with the form laid down in Hogg's

Pl. & Forms, at page 343.   See also *Hawker* v. *Railroad Co.*, 15 W. Va. 628; *Washington* v. *Railroad Co.*, 17 W. Va. 190; *Harper* v. *R. R. Co.*, 36 Fed. Rep. 102; *Scott* v. *Hogan*, 72 Iowa 614, 34 N. W. 444; *McFadden* v. *Ry. Co.*, 92 Mo. 343, 4 S. W. 689.   The declaration is good under section 3849 Annotated Code of 1906, where it is provided that "On a demurrer (unless it be to a plea in abatement) the court shall not regard any defect or imperfection in the declaration or pleadings, whether it has heretofore been deemed . misleading or insufficient pleading or not, unless there be omitted something so essential to the action or defense that a judgment according to law and the very right of the cause cannot be given."   The object of the plaintiff's declaration is to give the defendant notice of his claim for damages and in this case the defendant is informed that plaintiff claims damages for the killing of his horse through the negligent acts of its servants and employees in the careless and negligent management and running of its locomotive and cars.   We conclude the demurrer was properly overruled.

Now as to the demurrer to the evidence.   It is the duty of the servants of a railroad company in charge of its trains to keep a lookout for stock upon the track, and if stock happens to be on the track and is killed by the train the company is liable for the value of the stock so killed, if the killing could have been avoided by the exercise of ordinary care; that is, if it could have been seen in time to have avoided the killing by the use of ordinary care, though it may not actually have been seen in time to avoid the accident.   *Blaine* v. *Railroad Co.*, 9 W. Va. 254; *Baylor* v. *Railroad Co.*, *Id.* 270; *Washington* v. *Railroad Co.*, 17 *Id.* 190; *Bullington* v. *R. R. Co.*, 32 *Id.* 436 and *Heard* v. *Ry. Co.*, 26 *Id.* 459.

The evidence shows that there were two engineers on the engine on duty at the time of the killing of the horse—Mr. Bartell, Road Foreman of Engineers, and J. W. Bull who was running the engine.   Bull was at the place of the engineer on the right hand side of the engine and Bartell on the left side when the train emerged from a cut so that the track was in view for the distance of 1670 feet, all of which distance was clearly in the view of Mr. Bartell.   The horse

that was killed came on to the track running towards the engine and must have been in sight within the 1670 feet when the train came through the cut. The horse had blankets upon him which dropped from him on to the track some two or three hundred feet before he reached the point where he was struck. The horse ran about six hundred feet on the track meeting the train after he came to the point where he could have been seen from the engine after it emerged from the cut. Mr. Bartell testified that he did not see the horse until it was within about three hundred feet of the engine, yet he says positively that he saw the blankets fall off the horse which ran two or three hundred feet after the blankets dropped off before it was struck, but he failed to call attention of engineer Bull to the fact that the horse was on the track and running towards the engine until it was within three hundred feet of the engine. Engineer Bull testified that he did not see the horse until it was struck and falling over the embankment from the engine, owing to the fact that the nature of the curve, the dome of the engine, sandbox, bell and headlight obstructed his view. A diagram is filed with the evidence in the case made by surveyor Morgan, who was a witness for plaintiff, by which it is shown, together with the evidence of Morgan, that from the point where the train came out of the cut to the point where the horse was struck was 1070 feet, and the distance from the point of the collision to where the track was first in view of the engine from the first point named, where the horse could have first been seen, was six hundred feet and the horse was seen at least from two to three hundred feet by Bartell east of where he was struck by the engine as the blankets were found there, so that Bartell must have seen the horse immediately after the engine came through the cut and as the horse was running on the track meeting the train prompt action on the part of the engineer when Bartell saw the blankets fall from the horse would have enabled them to have stopped the train before striking the horse, as it is shown in evidence that the train could have been stopped in seven hundred feet; but as shown by the evidence the first effort that was made to slacken the speed of the train was when the engine was within three hundred feet of the horse and it was only slightly slackened when the

horse was struck. The demurrer to the evidence under the rulings laid down by this Court in *Heard* v. *Railway Co.*, *supra*, and many other cases, was properly overruled by the court.

It is claimed by the plaintiff in error that the damages found by the jury are grossly excessive and "evidences prejudice, hostility and temper on the part of the jury. The only evidence is found on pages 21 and 22 on cross-examination." Counsel overlooks the fact, in making this statement, that not only the plaintiff stated that the horse was "worth three hundred dollars but that J. G. Rixey, another witness, testified that the horse was "worth three hundred dollars in hand money right down;" also another witness, I. K. James, testified: "Q. What was that horse worth, Mr. James? A. About three hundred dollars any how. Q. How much? A. Two hundred and seventy-five or three hundred dollars, or three hundred and a quarter."

The proof is ample as to the value of the horse to sustain the verdict of the jury. For the reasons stated the judgment of the court is affirmed.

*Affirmed.*