# CHARLESTON.

CARPER v. MONONGAHELA VALLEY TRACTION CO.

Submitted April 25, 1916.   Decided May 2, 1916.

RAILROADS—*Operation—Injuries to Animals—Evidence.*

Defendant's demurrer to the plaintiff's evidence in this case—an action for alleged negligence in killing one of plaintiff's fat cattle—was properly sustained and relief denied.

Error to Circuit Court, Harrison County.

Action by Abraham Carper against the Monongahela Valley Traction Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*E. D. Lewis,* for plaintiff in error.

*Osman E. Swartz* and *E. Bryan Templeman,* for defendant in error.

MILLER, JUDGE:

In an action for damages by plaintiff against defendant for its alleged negligence in killing a steer the court sustained

defendant's demurrer to plaintiff's evidence and pronounced the judgment of nil capiat complained of.

The sole question presented for decision is whether the evidence is sufficient to show negligence or from which negligence can reasonably be inferred within the well settled rules applicable in such cases?

The action was begun before a justice, and was finally tried on appeal in the circuit court on January 29, 1915. The time of the accident was 9:05 o'clock, on the night of July 17, 1914. The killing of the steer was by a regular north bound traction car being driven by motorman Musgrove, from the City of Weston to the City of Clarksburg, and at a point on the traction line where it passes through the farm of the plaintiff. The only eye witness to the immediate accident was motorman Musgrove, a man of mature age, with ten years experience as motorman, and as his testimony indicates a very intelligent witness, introduced by plaintiff to maintain his case.

Mr. Musgrove testified that the night was dark, that just before reaching the place of the accident it had rained some and the track was a little slippery. The testimony of some other witnesses tends to show that it had not rained at the particular point and incident of the injury, but it is conceded that it did rain hard there within a half hour after the accident, and there is little doubt but that the sky was beclouded and the twilight obscured thereby; at all events the motorman says the night was dark, though not too dark, as some of the witnesses say, to go about without a lantern. The evidence of Musgrove, and of other witnesses, two of them civil engineers, who made measurements and filed maps of the plan of the track, and profiles of the ground in the vicinity of the accident, shows without contradiction, that going in the direction the car was travelling the point where the steer was first struck on the track to the cattle guard ahead to which the steer was dragged by the impact before the car was brought to a stop is about fifty feet; that before reaching that point the track first runs on a curve of five degrees through a cut, about three feet deep on the east side of the track and the inside of the curve, and some six feet deep on the opposite side,

where the track straightens out for the distance of about one hundred and forty and a half feet south of the cattle guard over a fill about three feet high at the highest point; some witnesses place the distance at about one hundred and fifty feet; the difference is not very material. The motorman swears positively that he first saw the steer when the head light on his car first revealed him, then either in the act of getting up from a recumbent position on the right of way near the track or just coming over the top of the fill; he was unable to state positively which, and that he immediately applied the regular brakes and the emergency brakes, all in good condition, and did everything within his power to bring his car to a stop before reaching the steer; that the animal first ran ahead along and on the outside of the track for about fifty feet, and then suddenly attempted to cross the track in front of the car just as the car struck him and dragged him ahead to the cattle guard, a distance of about sixty five feet before the car was brought to a stop. The motorman swears that the car was running at the rate of from fifteen to eighteen miles per hour. If, as the witnesses substantially agree, the track was straight for the distance of from one hundred and forty to one hundred and fifty feet south of the cattle guard, and if, as the motorman swears, he saw the steer on the side of the track when the head light first revealed him, and he then ran fifty feet before he turned to cross the track and was struck by the car, and was then dragged fifty or sixty feet to the cattle guard, he could not have been over forty or fifty feet from the car when he was first sighted by the motorman. The motorman swears that under the most favorable circumstances, running at the rate he was running, his car could not have been brought to a stop in less than one hundred and fifty feet. If this be so, and no witness, or fact, or circumstances in evidence contradicts him, then how could a court or jury say defendant was guilty of negligence?

But the further contention of plaintiff's counsel is, based on the expert evidence of one of the engineers and other witnesses, that at a point on the curve three hundred and fifty or four hundred feet from where the steer first appeared to the motorman as he rounded the curve and came upon the straight piece

of track he could have seen the steer, if he had been on the lookout at the instant when the head light on the car may perchance have been cast on that point, if then lying on the fill or getting up or coming over the bank. It, is conceded, however, that in rounding the curve the rays of light from the head light on the car were continually on a tangent to the outside of the curve and would reveal objects on the track or near the track only a very short distance ahead of the car. We know from the evidence that other cattle of plaintiff were in the field in the same vicinity, and that the duty was imposed upon the motorman running in the night time at this particular place to keep a lookout immediately in front of his car for objects on the track, to protect the lives of his passengers as well as his own life. How then could a court or jury find him negligent under the circumstances for not seeing this particular steer, if he was on the track, or near the track, at the particular instant when the light on the car may have revealed the animal on the right of way, near the track? The theory of plaintiff's counsel, if otherwise well founded in fact, assumes that the steer was lying down, or then in the act of coming up over the bank, but no witness so states. And would it not be going a long way in order to impose liability on defendant to find from the evidence that the motorman was negligent for not then or sooner discovering the steer on or near the point on the track where he was struck by the car? We certainly think so. We think we should not accept finely spun theories based on this evidence of the expert witnesses. No witness swears that a motorman stationed on the car as Musgrove, the motorman, then was, and under the same or similar circumstances surrounding him could by reasonable diligence have seen the animal on the track at the distance indicated or at any point on the way in time to avoid killing him. Every instinct of his human nature, not only for the preservation of his own life, and the property of the defendant, but also for the lives of his passengers impelled him to be continually on the lookout for objects on the track. While this fact is not conclusive on the question of negligence it is a factor that must be given due weight, particularly under

the circumstances surrounding the motorman on the particular occasion in question.

We cannot further detail the facts; it suffices to say that we have carefully read and considered all the evidence and have come to the conclusion that the court was clearly right in sustaining the demurrer and denying the plaintiff relief.

The material facts are not in conflict, so as to have entitled the plaintiff to have them submitted to the jury. While the witnesses may disagree in some points they are not in disagreement as to the substantial and conclusive facts, and if the case had been given to the jury, a verdict for plaintiff on the evidence could not have been permitted to stand. This is the test on the demurrer to evidence.

It is true, as decided in *Robbins* v. *Railroad Co.*, 62 W. Va. 535, and the same principle was applied in *Blankenship* v. *Kanawha & M. R. Co.*, 43 W. Va. 135, with respect to live stock on the track, that it is the duty of a railway company to keep a lookout for such stock upon the track, and failing to do so, if it be killed and the killing could by the exercise of ordinary care have been avoided, the railway company is liable though it may not in fact have been seen in time to avoid injuring or killing it. Ordinary care does not mean extraordinary care. It means such care as the employees of the railway company, under all the circumstances and consistent with their other duties should have observed respecting such dumb animals on the track. The evidence in the present case does not bring it within the rules of those cases. The motorman swears that he could not and did not see the steer in question in time to have avoided killing him. No one contradicts him; the facts do not contradict him, and a case of actionable negligence is not made out. Our opinion, therefore, is to affirm the judgment.

*Judgment Affirmed.*