# CHARLESTON.

### C. W. ELLISON v. NORFOLK & WESTERN RAILWAY CO.

Submitted January 29, 1919.   Decided February 4, 1919.

1. RAILROADS—*Killing Stock—Care Required.*

    A railroad company is not bound, in the exercise of the ordinary care and prudence required of it for the safety of trespassing animals, to maintain such a constant and rigid obeservation of the track, as will enable it to discover, at the inception of their trespass, animals coming on it near a curve, in advance of a train, and quickly proceeding around the curve and beyond the range of view.   (p. 318).

2. SAME—*Killing Stock—Negligence.*

    Nor can it be deemed or held to be guilty of negligence for failure to discover animals on its track, at the end of a curve around which a train is passing, at a point so near to the curve as to allow the enginemen only two or three seconds in which to discover them, determine what course to pursue and apply the brakes.   (p. 318).

3. TRIALS—*Instruction—Evidence.*

    The trial court may properly give an instruction lacking a qualification by an hypothesis unsupported by evidence and refuse to give an instruction embodying such hypothesis.   (p. 320).

Error to Circuit Court, McDowell County.

Action by C. W. Ellison against the Norfolk & Western

Railway Company.   Judgment for plaintiff, and defendant brings error.

*Reversed, verdict set aside, new trial awarded.*

*Theodore W. Reath, Graham Sale* and *J. Randolph Tucker,* for plaintiff in error.

*Cook & Howard,* for defendant in error.

POFFENBARGER, JUDGE:

The principal ground of assault upon the verdict underlying this judgment for $300.00, obtained in an action against the defendant for the alleged negligent killing of the plaintiff's two mules, is insufficiency of the evidence to sustain it.

While the defendant's east-bound train running at the rate of thirty or thirty-five miles an hour, up grade, on a moonlight night, and carrying not less than seven or eight coaches, was running on a straight stretch of track about half a mile long, towards a sharp curve, the plaintiff's two mules went on the track ahead of the train, at a point about 246 feet from the beginning of the curve, trotted along on the track for a distance of about 375 feet and then ran to the point at which they were struck by the engine, 759 feet distanct from the place at which they had come on the track and practically, if not quite, beyond the curve. As nobody saw them until just before they were struck, the time at which they came on the track with reference to the approach of the train and what they did before they were struck, are matters of inference arising from their tracks made in the cinders on the railroad track. Witnesses testified that their inspections of the mule tracks enabled them to say they had trotted a portion of the distance and run the balance of it. A mathematical calculation based upon the assumed rate at which the mules traveled and the rate of speed at which the train was running, indicates that they were on the track only about forty-three seconds. If the evidence justified the jury in finding that they were there, only for that period of time, not more than seventeen seconds elapsed from the time they went on the track until they disappeared around the curve. That they went beyond sight around the curve

in a few seconds, is clear. The engineer swears he saw them at a distance of only thirty or forty feet, before the engine struck them, and that, for his own safety and that of the passengers, he applied the emergency break and stopped the train with a considerable jar, but was unable to do so in time to avoid the injury. He further testifies that he could not have stopped the train within less than 150 feet. Evidence was adduced to prove opportunity on the part of the engineer to discover the mules at a distance of 150 or 200 feet, after they had passed around the curve, but it is not very clear. The plaintiff testified that the point at which they were struck was beyond the curve about six rail lengths and on practically straight track. He does not say it was straight. Another witness says this point was on straight track at a distance of four or five rail lengths from the curve. A photograph introduced by the defendant indicates that they were struck right at the end of the curve. One of the mules was knocked off of the track and the other went under the engine and was dragged about six rail lengths. The engineer swears he was looking ahead, but not that he could not have seen the mules earlier, nor that he maintained a look-out upon the track. His statement that he was looking ahead may have been evasive.

The inference that the rays from the head-light and noise of the train more than one thousand feet away excited the mules into a trot, upon their arrival upon the track, and the increase of the light and noise frightened them into a run, is, no doubt, permissible; but, whether the short period of their visibility at this point brought them within the duty of the defendant, through its servants in charge of the train, to observe them, is one of the crucial questions in the case. As to passengers, the duty imposed by law upon a carrier is strict and rigid. But, as to persons and property wrongfully upon the track of a railroad company, the measure of the company's duty is ordinary care. *Carper* v. *Traction Co.,* 78 W. Va. 282; *Robbins* v. *Railroad Co.,* 62 W. Va. 535; *Gunn* v. *Railroad Co.,* 36 W. Va. 165; *Lane* v. *Railroad Co.,* 35 W. Va. 438. To require a railroad company, through its servants, to maintain a rigid and constant outlook upon its

track, to discover trespassing live-stock, in order to avoid injury thereto, would amount to an exaction of more than reasonable and ordinary care. An engineer ought reasonably to be expected to discover stationary objects on a tract, several hundred feet distant, or moving objects remaining visible, but to require him to observe an object that comes upon the track, more than a thousand feet in advance of the train and almost instantly disappears around a curve, would be clearly and manifestly inconsistent with the measure of his principal's duty. Some of his time must be devoted to necessary attention to his engine. Moreover, it is not to be assumed, nor is it permissible to infer, that his vision always takes in at the same instant, the entire length of the visible track ahead of him. Though the engineer does not say he did not discover the mules before they went around the curve, in so many words, his language plainly implies he did not, for he says he first saw them at a distance of not more than thirty or forty feet. While his testimony in denial of negligence on his part, before they reached the curve, might have been more direct and positive, there was no duty on the part of the defendant to repel by such evidence, a charge of negligence not *prima facie* established by the plaintiff's testimony. As the mules came within the possible range of view and almost immediately passed beyond it, the defendant cannot be held liable for failure to discover them within the few seconds of their visibility at that point.

The assumption that the mules were struck after they had passed around the curve and proceeded one hundred and fifty or two hundred feet on straight track does not warrant the inference that the engineer could have seen them at that distance; for both the engine and the mules were going in the same direction, when the latter first came within the range of view, and continued to do so until the instant of contact. The mules were running ahead of the train at an estimated rate of fifteen miles per hour, or twenty-two feet per second, while the train maintained a rate of forty-four feet, or more, per second. If the engineer's judgment as to the distance of the mules in advance of the train, when he says he first saw them, is correct, and he immediately applied the emergency

brake, the rate of speed of the train may have been so far reduced as to have left it only slightly in excess of that of the mules, when they were struck. Hence, the engineer may have discovered them at the first opportunity. Facts and circumstances, however, tend to disprove this theory. The engineer says he could have stopped the train within two hundred feet. With a mule under his engine and impeding its progress, it ran six rail lengths, one hundred and ninety-eight feet, after the collision. If the mules were struck at a point four or five rail lengths beyond the curve, one hundred and thirty-two or one hundred and sixty-five feet, the engine must have been more than three hundred feet from the curve, when it stopped and the brake must have been put on at a point about one hundred and thirty-two feet from the curve. If this is a sound inference and the engineer's estimate of the distance between the engine and the mules, when they were discovered, is correct, only about two seconds elapsed from the time at which the mules became visible until they were discovered. Within that brief period he must have made the discovery, decided what to do and applied the brakes. On the best showing that can possibly be made for the plaintiff, therefore, the engineer had an unreasonably short period of time in which to take necessary precautions for the safety of the animals, including that of look-out, and the proof is that he did everything in his power to avoid injury after he discovered the danger.

In this state of the evidence, the court erroneously refused the prayer of the defendant for a peremptory instruction directing the jury to find for it. In view of the award of a new trial, it becomes necessary to pass upon exceptions to the court's rulings respecting other instructions, one given for the plaintiff and one asked for by the defendant and refused. In both instances, the rulings were proper, there being no evidence to sustain the hypothesis embodied in the instruction sought by the defendant, which had for its purpose qualification of the instruction given for the plaintiff. The proposition invoked, as a proper qualification of the plaintiff's instruction, and as the subject matter of the defendant's rejected instruction, was that the engineer was

under no duty to stop his train in such manner, or under such circumstances, as would jeopardize the safety of himself or his passengers. The proof is that he put on the emergency brake and endeavored to stop the train in the shortest possible distance. If delay was excusable under the circumstances, the defendant did not take the benefit of it, at the time of the collision. Hence, it was not involved in the trial.

These principles and conclusions result in reversal of the judgment, setting aside of the verdict and award of a new trial.

*Reversed, verdict set aside, new trial awarded.*