# CHARLESTON

## MELTON *v*. RAILROAD.

Submitted March 3, 1908.    Decided March 24, 1908.

1. RAILROADS—*Injuries to Trespassers.*
     A person using a railroad track as a foot path for his convenience elsewhere than at a public crossing and injured by a train while so doing, cannot recover damages unless the company is guilty of gross and wanton negligence. (p. 171.)

2. SAME—*Warning Trespassers.*
     Signals or lights or watchmen are not required on a backing train elsewhere than at public crossings to warn trespassers using the track for their own convenience as a foot path.   (p. 171.) .

Error to Circuit Court, Kanawha County.

Action by J. J. Melton, sheriff, against the Chesapeake & Ohio Railway Company.   Judgment for plaintiff, and defendant brings error.

*Reversed.   Remanded.*

SIMMS, ENSLOW, FITZPATRICK & BAKER, for plaintiff in error.

LINN, BYRNE & LINN and HENRY S. CATO, for defendant in error.

BRANNON, JUDGE:

Peter Myers was killed by a locomotive and tender on the Chesapeake & Ohio Railway, and his administrator having recovered a judgment for $2,000 the railroad company has appealed the case to this Court.

The great question of the case is, Was Myers killed at a public crossing or while using the track elsewhere for walking? For the rights of Myers and the liability of the defendant would be different in the two cases.   The court put to the jury this interrogatory:   "Was Peter Myers killed at a public crossing?"   The answer was, "Yes."   This answer is utterly unwarranted by the evidence.   If anything can be said to be established by the oral evidence and undisputed physical facts, it is that Myers was struck by the tender of the locomotive at least seventy five yards from the public

crossing while using the track for a walk-way. The case is void of evidence to the contrary, from either side. A plaintiff's witness, Linville, saw Myers walking along the county road approaching the crossing. Myers was in advance of Linville seventy-five yards, both going to the crossing. Myers thus reached it before Linville did. When Linville reached the crossing Myers was not there, but had left the county road and gone up the railroad track. This witness saw Myers last seventy-five yards from the crossing on the track, going from the crossing on his way home. There is no contradiction of this witness. Not a man says that he saw Myers at the crossing. No other witness locates Myers while walking. Myers had been to a store where he purchased overalls, which were wrapped in red paper, and he was carrying this bundle when this witness observed him. At a point on the track distant seventy-five yards from the crossing toward the home of Myers his legs are found, and very close these overalls, and some of the red paper, and further along the track, one hundred yards from the crossing, his head and mangled body are found, and his blood is found staining the snow many feet from the crossing, and not a drop is proven to have been seen at or near the crossing. A witness for the plaintiff when asked if he saw any blood nearer the crossing answered, "No, I never noticed any only where it first run over him there and cut him in two." Another witness for plaintiff, Murray, says he saw a piece of the red paper in which the overalls had been wrapped, the overals a few feet further east from the crossing, a few feet further still Myer's legs, then further still the body, and that he saw no signs of Myers being struck nearer the crossing than that paper fastened to a fish plate, and when asked if the snow would not have shown it if Myers had been struck nearer, he replied, "I think so." He puts the paper fastened to the track three hundred feet from the crossing, and that paper was, beyond any dispute, nearer the crossing than the overalls, the legs and the head and trunk of Myers. He pointedly stated that he walked backward and forward over the ground, and saw no signs of blood between the paper and overalls and the crossing. These facts are beyond question, these physical facts. No one controverts them, or tries to do so. They must be regarded as *concessa* in the case, not being disputed by any

evidence. How could the unfortunate Myers have been struck at the crossing in the light of these facts? This witness Linville was at the crossing lighting his lamp waiting for a west bound freight train and the locomotive which killed Myers to pass. He stood at the crossing a few feet aside, and he did not see Myers there, but before the cars got to the crossing saw Myers walking homeward seventy-five yards from the crossing. If killed at the crossing, would not this witness have seen him? The west bound train's headlight illuminated the crossing, but did not reveal Myers at the crossing. After the trains passed in opposite directions this witness left the crossing, walking the track, and found Myers legs on the track, not nearer the crossing than seventy-five yards, and the rest of his body one hundred yards. Another witness of the plaintiff, Creasy, says that he was standing in his door twenty feet from the crossing, and saw the backing engine and tender that struck Myers, and says that it went on east after passing the crossing till it was obscured from him by his barn, distant one hundred feet east of his house, and that Myers was killed east of the barn one hundred or one hundred and twenty-five feet, and the crossing was twenty feet west of his house, thus fixing the point where Myers was struck from two hundred and twenty to two hundred and forty-five feet from the crossing. This witness is positive that Myers was not killed at the crossing, but two hundred or two hundred and twenty-five feet east of his house, and two hundred and twenty to two hundred and forty-five feet east of the crossing. He went to Myers body at once after the accident. No witness hints any other point for the tragedy. Such the evidence for plaintiff. The fireman of the engine as a witness for the defendant states that the freight head light was shining right on the crossing as it approached the crossing, and he could see the crossing, and that the engine struck no one at the crossing. So says the engineer.

As Myers was walking the track, elsewhere than at a crossing, the company owed him no duty save not to kill him by gross neglect after seeing him. Not a witness says that the trainmen saw him, or could have done so. It was on a January evening late as darkness descending, dusk. No evidence shows any negligence on the part of the trainmen. It

is not claimed that they saw or could have seen Myers. The explanation of the misfortune is that Myers saw the freight coming, and likely stepped off the track to escape it on to the adjoining track, and was caught by the backing train, the noise of the big train drowning the sound of engine and tender that struck Myers. The finding that Myers was killed at the crossing is so contrary to the evidence that it seems to be the child of prejudice and partiality doing injustice. If anything can be said in mitigation of the imputation of prejudice, it is that the jury decided the case on false tests of liability set up by them unwarranted by law, as shown by their answers to certain other interrogatories. One was, "What want of care, if any, was the company guilty of?" Answer, "For not having watchman at that crossing." What law required this? Myers was not killed at the crossing. Another interrogatory was, "Was any employee guilty of want of care? If so, who, and what was the want of care causing the accident?" Answer, "Officers in charge of engine for negligence and want of proper lights and signals." The law requires no signals except at crossings. They are intended for persons lawfully using crossings, not trespassers on track elsewhere. The jury does not specify want of signals by bell or whistle, as the plaintiff's evidence and the defendant's shows compliance with the statute in this respect. What signals were wanting? As to light. No law requires a light elsewhere than at a crossing. The jury found there was no light on the tender. It was not required except at crossing, if there, and Myers was not struck at the crossing. The law does not require lights on a backing train to warn trespassers. Elliott on Railroads, (2 ed.), sections 1114, 1114a; *Huff* v. *C. & O. Ry. Co.*, 48 W. Va. 45. "If one chooses in such a position to take risks, he must suffer the consequences. They cannot be visited upon the railroad company." *Railroad Co.* v. *Houston*, 95 U. S. 697. The jury tried the case by tests contrary to law and made the company liable for things for which the law would not do so.

We reverse the judgment, set aside the verdict and grant a new trial.

*Reversed. Remanded.*