# CHARLESTON

Ross v. Kanawha & Michigan Railway Company.

Submitted March 16, 1915.   Decided April 13, 1915.

1. Railroads—*License to Cross Under Cars—Gratuitous Agreement.*
    Where a railway company, solely at the instance and for the convenience of persons having no connection with its business, gratuitously agrees to separate cars which it stores on its side tracks, so that such persons may cross the tracks at a particular place, a license or permission to cross over or under the cars when not so separated is not thereby given. (p. 199).

2. Same—*"Trespasser"—Person Crossing Under Cars.*
    One who without permission crawls under cars of a railway company, left standing on its tracks at a place not a public crossing, is a mere trespasser. (p. 200).

3. Negligence—*"Licensee"—Attendant Risks.*
    A person exercising a privilege which exists solely for his own convenience or benefit is a bare licensee subject to all attendant risks. (p. 201).

4. Railroads—*Duty to Treat Place as Public Crossing—Invitation or Right.*
    In order to impose on a railway company the duty to treat a place

76 W. Va.

as a public crossing, those who use it as a crossing must do so under legal right or at the invitation of the company. Mere license or permission to cross the tracks of a railway company is not equivalent to an invitation. (p. 202).

(Lynch, Judge, absent.)

Error to Circuit Court, Fayette County.

Action by Chloe Ross, who sues, etc., against the Kanawha & Michigan Railway Company. Judgment for plaintiff, and defendant brings error.

*Reversed, and new trial awarded.*

*W. N. King* and *Leroy Allebach,* for plaintiff in error.

*Dillon & Nuckolls,* for defendant in error.

Robinson, President:

In this case the plaintiff is a little girl, twelve years old at the time of her injury, suing for the recovery of damages from a railway company because of the loss of her left leg. From a judgment in her favor the railway company brings error.

Plaintiff lived in a mining village which was made up of the plant, store, dwellings, and club house of the coal company there operating. She was the daughter of an employee of the coal company, living in one of the dwellings. The coal operation, store, and dwellings were on one side of the railway, the club house on the other. The latter, living quarters for the coal company officials and others, was almost directly opposite the store. Through the village the railway company maintained five tracks, a main line with two tracks on each side of the same. The side tracks were largely used for storing cars needed in the transportation of coal from the several mines in the vicinity. In going to the club house from the main part of the village, it was of course more convenient to go directly across these tracks than to use a public crossing located several hundred yards above. On the day plaintiff was injured, she had been to the club house to deliver milk which her parents sold there. On her way from her home to the club house she found cars standing on the side tracks, with no openings between them, as was usually the case, and

crawled under them, or between them at the couplings.  She had begun to return the same way when the long string of cars standing on the track nearest the club house, under couplings of which she was crawling, was started by an engine attached thereto at a distance so far she could not have seen it.  Just as the cars were about to be moved, a trainman who was standing on the other side from that whence she came, noticed her and told her to get back.  It was too late.  Before she could return, the wheels crushed her leg so that it was necessary to amputate the same.

Out of convenience it was usual for persons to travel directly across the tracks between the store and the club house, going over or under the cars whenever the side tracks were blocked by them.  The little girl had frequently gone over there in her duty of delivering milk.  The general superintendent of the railway company had gratuitously agreed with the superintendent of the coal company to keep the way open for the convenience of the coal company and its employees by separating the cars when they were left on the side tracks. But this agreement was neglected and had not been well fulfilled.

(1)  The theory of plaintiff's counsel, embodied in the main instruction given to the jury on behalf of plaintiff, is that by reason of the agreement of the railway company to separate the cars, plaintiff was not a trespasser but a licensee, and that therefore defendant owed her the duty of reasonable care.  Upon a true view of the facts proved this instruction was inapplicable, misleading, and erroneous.  It as much as told the jury that an agreement to separate the cars gave plaintiff license to crawl under the cars if they were not separated.  The agreement gave plaintiff no such license.

Plaintiff proved only that by consent of the railway company she had permission to cross when the cars were separated.  No other license was granted to any one.  There is not a word in the case implying that the railway company consented with the coal company that agents and servants of the latter might climb over or crawl under the cars in case the railway company failed to separate them.  Indeed it is inconceivable that any official connected with the railway company would consent to such a thing.  Clearly the failure

of the railway company to separate the cars did not give any one a more extended license than that which was actually granted. That license, as we have said, was only to cross the tracks between separated cars.

It must be noticed that the duty of a railway company at a public crossing is not involved in this case. If that were so, the case might be different. It is not even contended that the crossing was a public one. The evidence is too clear that it was not. The railway company had refused to establish a public crossing at the place. Thereafter, at the insistence of the coal company, wholly for the benefit and convenience of the coal company and its employees, the railway company consented merely to separate the cars when placed on the side tracks, so that persons could pass between them. This consent in no way related to any benefit or advantage to the railway company. It had no station at the place. In any view the evidence establishes nothing else than a mere permission by the railway company that persons might, without invitation on its part, cross the side tracks from the store to the club house between cars to be separated thereon. We confess having tried to reason more than this out of the facts and circumstances proved. But that can not be done.

(2) It is clear that this little girl in doing that which brought her injury was a mere trespasser. She had no permission or license to crawl under or between the cars. Defendant owed her only the duty that railway companies owe to trespassers. Even to trespassers, under some circumstances, a railway company owes duty not to injure. If the train men knew, or in reason should have known, that plaintiff was on the track under or between the cars, it was certainly actionable negligence for them to move the cars while she was in such position. Whether the case warranted a submission to the jury on any theory of duty to a child trespasser we need not say. It was not so submitted. As the case must be remanded for new trial, in which the evidence may be different, we do not think it necessary to speak further in this particular. Though it may have been error to overrule defendant's motion to exclude plaintiff's evidence, defendant offering none, still we do not have the case on demurrer to the evidence calling for final judgment here.

Nor can we see clearly that plaintiff may not make a better case on another trial. Notwithstanding conflict in our decisions, the proper practice is to award new trial in such case. *Hoylman* v. *Railway Co.*, 65 W. Va. 264.

(3)    Even if the agreement proved could be construed to have licensed plaintiff to climb over or crawl under the cars when not separated, or if plaintiff had been crossing between separated cars when she was injured, in neither case would she have been such a protected licensee as the instruction tended to mislead the jury to believe she was.    She would have been only a bare licensee, subject to the risks which pertained to the exercise of the license. For she was there wholly for her own business or convenience. · Her being there was not by invitation of the railway company. In a legal sense, the railway company had nothing to do with her being there, except to permit it. ''A case of invitation exists where one goes upon premises for the common interest or mutual advantage of both parties, but if such privilege exists for the mere pleasure and benefit of the party exercising it, there is simply a case of license.'' 1 Kinkead on Torts, sec. 318. ''A mere naked license or permission to enter the premises will not create a duty in favor of the person entering, or impose upon the owner or tenant who grants the license an obligation to provide against dangers or accidents which may arise out of the existing condition of the premises; for the licensee goes upon the premises subject to all the dangers attending his going; and so enjoys the license subject to its concomitant perils.'' Buswell on Personal Injuries, sec. 79. · True, our cases hold that a railway company owes, under certain circumstances, the duty of reasonable care to a young child on or in dangerous proximity to its tracks. But when there is such duty, it can not arise out of some bare license the child may have. It rests on other grounds, and is determinable by the particular facts and circumstances. Yet the instruction in this case gave great force to a license which, if the same had been applicable, was only a bare license on which could be based no right of recovery for failure to exercise ordinary care. The instruction contained a most erroneous and prejudicial theory. The real question presented in the case as made was whether under the facts and

circumstances appearing the railway company owed duty to the child as a trespasser on the tracks and had failed to fulfil the duty. Properly the case could only be tested on this theory.

(4) Counsel for plaintiff contend that though the crossing was not a public one, yet it was one where the railway company owed the same duty of care that pertains to a public crossing. We readily see that this proposition ignores the fact that only a bare permission to cross between separated cars had been given. But suppose, as plaintiff's counsel infer, that the consent granted embraced permission that persons might cross the tracks though the cars were not separated; still that would not make the place a crossing entailing the same duty on the railway company as at a public one. A bare permission, not an invitation or legal right, existed. That the railway company allowed people to cross did not put on it public crossing duty. The mere naked license or permission relied on in this case will not do that. "Although the place is used repeatedly and frequently as a crossing with the mere silent acquiescence of the company, or with the knowledge and simply passive permission of the company, it would seem that the traveler who uses it is at most a bare licensee, who takes his license with all its concomitant risks and perils, and as a general rule, the company owes him no duty greater than that which is due to a trespasser. In order to impose upon the company the duty to treat a place as a public crossing, those who use the place as a crossing must either have a legal right to so use it, or must use it at the invitation of the company, and neither sufferance, nor permission, nor passive acquiesence is equivalent to an invitation." 3 Elliott on Railroads, sec. 1154. That a railway company does not owe public crossing duty to a bare licensee or trespasser on its tracks, has long been settled in this jurisdiction. *Brally* v. *Railway Co.,* 66 W. Va. 462; *Melton* v. *Railway Co.,* 64 W. Va. 168; *Huff* v. *Railway Co.,* 48 W. Va. 45; *Spicer* v. *Railway Co.,* 34 W. Va. 514.

We do not deem it essential to take up other matters submitted in argument. The judgment will be reversed, the verdict set aside, and a new trial awarded.

*Reversed, and new trial awarded.*