JOSEPH L. JUERGENS v. SAMUEL FRONT.

(No. 7025)

Submitted March 1, 1932.   Decided March 8, 1932.

*Erskine, Palmer & Curl,* for plaintiff in error.

*Austin V. Wood* and *O'Brien & O'Brien,* for defendant in error.

HATCHER, PRESIDENT:

Plaintiff recovered in the circuit court of Ohio county a judgment of $10,000.00 as damages for personal injuries received in an automobile collision, and defendant obtained a writ of error.

In considering the testimony of plaintiff, his answers to leading questions on examination in chief which he afterwards modified have been avoided, and where admissions are taken from his answers on cross-examination, care has been exercised to see that he understood the questions. We also have avoided the testimony of defendant which is in conflict with that of plaintiff.

The collision occurred at the intersection of the National and Rockledge Roads in the city of Wheeling about nine A. M., August 21, 1928. Both litigants were residents of Wheeling and both were familiar with the situation surrounding the intersection. They were close personal friends and had spent the night before the collision together at a camp outside the city. Each had his own automobile and upon their return the following morning the defendant's car led the way until approximately 300 feet from the intersection, when the plaintiff passed the defendant *on his right,* and continued toward the intersection between one and two car lengths in advance and about four feet from the right curb. The Rockledge Road was then at their right. A slight rise and stone pillars at the intersection interferred with their view of cars approaching on that road. When about 160 feet from the intersection, plaintiff saw an automobile, later shown to be that of Palmer Boyd, commencing to enter the National

from the Rockledge Road. Plaintiff says: "When I saw that automobile, I didn't put my brakes on right away, I didn't know whether he was going further out or whether I was going to pass in front of him, or whether he was going by me, and I tried to figure out what he was going to do." When about 35 feet from the Boyd car, he applied his brakes hard (as shown by skid marks extending back that distance), and says very definitely that he simultaneously waved his left hand up and down outside his automobile window. Later, he attempts to say that he commenced signalling when from 60 to 100 feet from the intersection, but his last expression on when he first commenced to signal is: "I can't state any time on that, I don't know, I was still signalling just about when I hit." Seeing that he was about to run full tilt into the Boyd car, he veered to the left until only the right rear fender of his car came in contact with the left end of the front bumper of the Boyd car, which then was seven feet out on the National Road (actual measurement). By that time, plaintiff says, his car had almost stopped, when it was struck with tremendous force from behind by defendant's car, with the result that plaintiff was thrown into the road, run over by a fourth car, and most seriously injured.

The speed limit in the section of the National Road where the collision occurred was 25 miles an hour. Plaintiff admits he was "going fast"—was making "in the vicinity of 35 miles an hour"—as he approached the intersection, and his witness Boyd says when he got far enough out on the National Road (about four feet) to see plaintiff, he was from 30 to 40 feet away and was making "something beyond forty miles" an hour. Plaintiff estimates that he and defendant were making the same speed after he passed defendant and admits he knew when he swung to the left to avoid the Boyd car, that unless defendant also swung to the left at the same time, defendant's car would run into his. He was of opinion that the signal he gave prior to the collision could be interpreted either that he meant to stop or to turn to the left.

A woman who was with plaintiff, another woman who was with defendant, and the defendant himself all testified that when plaintiffs car passed the defendant's the plaintiff was

laughing and waving at the defendant. The plaintiff did not deny this testimony, although his attention was directed to it. The woman with the defendant further said that she saw the Boyd car entering the National Road, when plaintiff was 35 to 40 feet from that car.

The defendant testified that the Boyd car was practically out on the National Road when he first saw it; that he did not see the signal given by plaintiff just before the collision; that he did observe plaintiff's car bearing to the left and he immediately swung his car also to the left in a futile attempt to avoid the collision; and that he was making then between 40 and 45 miles an hour. (No witness gave any less estimate of defendant's speed.)

Plaintiff realizes that his own excessive speed and his own incaution were responsible primarily for his position of danger. He invokes the doctrine of the last clear chance, however, on the theory that had the defendant been exercising due care, he would have observed the Boyd car start to enter the National Road as well as the signal given by plaintiff, and then could have avoided the collision.

The signal cannot be accorded much consideration because the plaintiff does not know when he commenced giving it. Moreover, there is nothing to distinguish the waving intended as a signal from the waving a few seconds before, in fun.

The defendant was of opinion that he was paralleling the right curb at a distance of some 25 feet. If so, he would have been in a better position to have seen the Boyd car entering the National Road than the plaintiff, who now claims a point in his favor on that theory. But the plaintiff and his witnesses say that when his car was struck, it was against the Boyd car which projected only seven feet on the National Road. The right fender of defendant's car struck near the center of plaintiff's car. A car is approximately five feet in width. Therefore, the physical facts established by plaintiff demonstrate that defendant's car was not over ten feet from the right curb at the moment of impact. This position of defendant's car accords also with the testimony of plaintiff and his witnesses, which is summed up in his brief as locating de-

fendant's car (after plaintiff took the lead) "almost directly back of Juergens."

Plaintiff contends that if defendant's companion saw the Boyd car on the National Road, the defendant should also have seen it. When his companion saw the Boyd car, plaintiff was within 35 to 40 feet of the point of collision; so she evidently saw the Boyd car just about the time the plaintiff commenced to veer and to skid his car. At that moment the defendant was from one to two car lengths behind plaintiff. More concretely stated, at that moment defendant was within 50 to 65 feet of the point of collision. At 40 to 45 miles an hour, his car was moving at the rate of 58 to 66 feet per second. So the time which intervened between the instant defendant should have seen the Boyd car and should have noticed plaintiff's car commence to veer, and the instant of collision was just *one second*. Peril arose and struck while the clock ticked but once. Professor Leon Green in his work on Judge and Jury, p. 141, well asks: "What court or group of laymen can so weigh faults as to pass with any precision upon the conduct of two swiftly moving automobiles, or two human beings bent on getting every second out of the way?" In *McLeod* v. *Laundry Co.*, 106 W. Va. 361, 365, 145 S. E. 756, 758, a case involving the last clear chance, it was said: "The authorities are unanimous in holding, therefore, that there must be an appreciable interval of time intervening between the injury and the driver's knowledge or notice of the intestate's dangerous situation." That observation is confirmed in *Waller* v. *Ry. Co.*, 108 W. Va. 576, 583, 152 S. E. 13. It is more elaborately expressed in *Barnes* v. *Ashworth*, (Va.) 153 S. E. 711, 720: "The last clear chance implies thought, appreciation, mental direction, and the lapse of sufficient time to effectively act upon the impulse to save another from injury." We are of opinion that under the circumstances one second was not sufficient time in which to require of defendant that he should have (1) comprehended the situation, (2) determined what each of the other two cars was likely to do, (3) formulated an effective plan to avoid striking the other cars, and then (4) executed the plan. Plaintiff points to the fact that in 35 feet (15 to 30 feet less

than defendant had) he brought his car to a virtual stop. He overlooks that the 35 feet but represents the execution of a plan, which he had been formulating while his car was advancing some 125 feet (160 less 35) and while, according to his own statement, he was trying *to figure out what Boyd was going to do.* Besides, the parties were driving different makes of cars, the plaintiff a Chevrolet and the defendant a Marmon. The distances in which the two cars could be stopped at a given speed is not necessarily the same. To the contrary, a qualified brake expert testified without contradiction that from 45 to 75 feet would be required in which to stop a Marmon car of the model of defendant's, going 40 miles an hour, and from 55 to 85 feet if the car was making 45 miles an hour, even under favorable conditions of road and weather. ''It should and must be emphasized that a plaintiff is not entitled to recover under the doctrine of the last clear chance upon a mere peradventure. * * * The burden is upon him to show affirmatively by a preponderance of the evidence which convinces the average mind, that by the use of ordinary care, after his peril was discovered, there was in fact a clear chance to save him. It is insufficient to show that there was a mere possibility of so doing.'' *Ry. Co.* v. *Thompson,* 136 Va. 597, 118 S. E. 76, 78. Even say the defendant was making only 40 miles an hour and was 65 feet from the point of collision when he should have discovered plaintiff's danger, and that he instantaneously comprehended the entire situation and simultaneously applied his brakes. There is no expectation of law that he should have responded with such celerity, but if he had, it is still mere conjecture whether his car would have stopped within the 65 feet. As the Virginia case stresses, this doctrine implies a *clear chance,* not a *mere possibility,* which is all the instant case discloses. Juries will not be allowed to apply this doctrine on possibilities. *Waller* v. *Ry. Co., supra.*

Accordingly we hold that this casualty happened too quickly to afford defendant a clear chance to avoid the collision, and that it was error to submit the case to the jury upon that theory. By reason of this holding, other errors alleged be-

come inconsequential. The judgment of the trial court is reversed, the verdict of the jury set aside, and the case remanded.

*Reversed and Remanded.*

WOODS, JUDGE, (dissenting):

I would uphold the verdict of the jury in this case.