Okley Stike *v.* Virginian Railway Company *et al.*

(No. 7851)

Submitted April 24, 1934. Decided May 1, 1934.

John R. Pendleton, for plaintiffs in error.

Walter G. Burton and Sanders & Crockett, W. W. Rogers and Ajax T. Smith, for defendants in error.

HATCHER, JUDGE:

The plaintiff, Okley Stike, aged eight years and five months, was struck and seriously injured by a passenger train of the defendant railway company. From a judgment in his favor, the defendants prosecute error.

The accident occurred on a sharp curve in a cut upon a steep hillside near the town of Matoaka. The railroad is double-track at that place. There is a flight of steps down the bank of the cut and a platform extending from the bottom step to the very edge of the railroad ties. Plaintiff had started to cross the tracks to deliver some milk for his father in

Matoaka, a customary service. He had come onto the railroad by way of the steps and the platform. When struck, he was standing on the end of a tie of the track next to the platform, watching a freight train pass on the other track.

A number of years ago a coal company operated a store below the railroad. Some of its employees lived on the hill above. The steps and the platform were constructed (in 1907) by the coal company for the use of those employees in crossing the railroad to the store. Part of the steps and all of the platform are on defendant's right of way, and were maintained by the coal company (until recent years) under an agreement with the defendant. The terms of the agreement are not in evidence, but it is described by a witness as "a lease or encroachment contract covering the encroachment on the right of way." The defendant itself arranged no facilities, in connection with the steps and the platform, for crossing the tracks. The coal company no longer operates; but the steps and the platform remain intact. The crossing at the steps is the most convenient walkway to Matoaka for the families residing on the hill. For which reason the crossing is still used habitually by those families—comprising some three hundred people.

The passenger train which struck plaintiff was running about twenty-five miles an hour. The engineer knew personally that little children were accustomed to cross the railroad at the steps. He testified that he was looking out for them at the very time of the accident; that the curvature of the tracks limited his view; that he did not see plaintiff until about thirty feet distant and then he applied the emergency brakes without avail. The fireman testified that he was also looking ahead but did not see plaintiff at all.

The train whistle was blown several times within a distance of 2,000 feet of the steps, but was not blown within 575 feet of that place. There is conflict in the evidence as to whether or not the engine bell was ringing. If it was, plaintiff's interest in the passing freight train prevented him from noticing the bell. There is also conflict in the evidence as to the distance in which the train could have been stopped. The estimates of trainmen range from 140 to 375 feet. By actual tests it was shown that the engineer could see a boy standing

where plaintiff was struck, a distance of 105 feet if he had his head and shoulders out of the engine cab, and only 37 feet if he were sitting in the customary position inside the cab. The evidence is conflicting as to the exact distance from the steps at which the fireman should have first observed the plaintiff, as the fireman's view was obstructed somewhat by the freight train. The distance claimed by plaintiff is 191 feet. That claim is seemingly well founded since one of defendant's own witnesses (after making observations from the engine) testified that commencing 190 feet from the steps, the plaintiff was within the fireman's vision for a space of some 30 feet along the track. The jury was taken to the scene and observed the making of several measurements from the engine, as it rounded the curve, to the place of accident.

Counsel for defendant takes the position that plaintiff was at most a bare licensee and that defendant owed him no duty except refraint from willful injury. A strong citation in support of that position is *Ross* v. *Ry. Co.*, 76 W. Va. 197, 85 S. E. 180, which holds that a railway company owes no public crossing duties to a licensee at a place not a regular public crossing; that in order to impose such duties on the company, those who use the place as a crossing ''must do so under legal right or at the invitation of the company''; and that ''mere license or permission to cross the tracks of a railway company is not equivalent to an invitation.''

It will be noted that the severity of the *Ross* decision is limited to licensees, and in no wise reduces the responsibility of a railroad company at a crossing used by the public ''at the invitation of the company''. In the instant case, the steps and the platform facilitate crossing the railroad. That facilitation induces the public to cross at that place. Such an inducement is taken at law to imply an invitation to the public to cross. *Ry. Co.* v. *Carper*, 88 Va. 556, 557-8, 14 S. E. 328; *Melton* v. *Ry. Co.*, 71 W. Va. 701, 78 S. E. 369; Elliott on Railroads, sec. 1154. The fact that the defendant itself did not maintain the steps and the platform makes no material difference. Defendant cannot escape responsibility for the invitation to cross its railroad, which it permitted the coal company to extend. When defendant executed the ''encroachment contract,'' it underwrote the invitation. The legal effect

of that invitation is to charge the defendant "with the duty of exercising the same degree of care as the law imposes at a public crossing." *Melton* v. *Ry. Co., supra;* 52 C. J., subject Railroads, sec. 1771. The care exercised by the trainmen when approaching this crossing was submitted to the jury on an instruction tendered by defendant. When we consider (1) that the speed of the train was seemingly uncontrolled as to the crossing itself, (2) that the trainmen failed to exert themselves to discover any one on the tracks at the earliest moment, and (3) that they did not signal the approach of their train in such manner that one at the crossing should have heard it despite the passing freight train—we cannot say that the finding of the jury against reasonable care is wrong as a matter of law.

The plaintiff was a well informed and well instructed boy for his age. Counsel for defendant contends that plaintiff did not exercise the prudence of which he was capable and was therefore negligent as a matter of law. The plaintiff's conduct was also submitted to the jury on an instruction tendered by the defendant. We are of opinion that the conduct of a child of plaintiff's age under the circumstances of this accident is essentially a jury question. *Stuck* v. *Ry. Co.,* 76 W. Va. 453, 459, 86 S. E. 13; *Morris* v. *Peyton,* 148 Va. 814, 139 S. E. 500. We cannot disturb the finding thereon.

Several errors are charged as to evidence admitted. We have carefully considered the charges and are of opinion that they are not substantial.

Defendant finally seeks to reverse because of after-discovered evidence. Even if diligence in its discovery be admitted, it is not such evidence as should produce a different verdict upon another trial. Consequently, it does not afford ground for reversal. *Halstead* v. *Horton,* 38 W. Va. 727, 18 S. E. 953; *Gray* v. *Powell,* 102 W. Va. 440, 444, 136 S. E. 40.

The judgment of the circuit court is affirmed.

*Affirmed.*