FRANK B. ISGAN

*v.*

OSCAR JENKINS, *et al.*

(No. 10217)

Submitted April 25, 1950. Decided May 23, 1950.

LOVINS, JUDGE, not participating.

*Robert W. Lowe, Amos & Amos, Curt E. Amos* and *John D. Amos,* for plaintiffs in error.

*Furbee & Hardesty, Russell L. Furbee, Raleigh Lee Stubbs* and *C. Howard Hardesty, Jr.,* for defendants in error.

GIVEN, JUDGE:

This is an action of trespass on the case, for recovery of damages for personal injuries suffered by the plaintiff, Frank B. Isgan, while attempting to enter a taxicab belonging to the defendant, Oscar Jenkins, then being operated by the defendant Ernest Hanley. The action was instituted in the Circuit Court of Marion County against Oscar Jenkins, doing business as Jenkins Taxi, Great American Indemnity Company, a corporation, Ernest Hanley, Charles Efaw and Earl Junior Efaw. The Great American Indemnity Company and Earl Junior Efaw were dismissed from the action by the lower court on motion of the plaintiff, and Charles Efaw was dismissed from the action, after introduction of evidence, on his own motion. The case was tried before a jury, a verdict returned in favor of the plaintiff against both defendants for $7,000.00, and judgment entered for the plaintiff for the amount of the verdict, but only against

the defendant, Oscar Jenkins, doing business as Jenkins Taxi. Upon petition of the defendants Jenkins and Hanley this Court granted a writ of error and supersedeas to that judgment. Inasmuch as there is no final judgment as to the defendant Ernest Hanley the writ of error and supersedeas so granted must be dismissed as to him as having been improvidently awarded.

The injury complained of occurred on Mill Street in the Town of Farmington on April 25, 1947, at about 7:50 P. M. The taxi, a four door sedan, was owned by the defendant Oscar Jenkins, and was then being operated by the defendant Ernest Hanley, an employee of Jenkins. The taxi was parked on the street on its left side, facing traffic, in front of the taxi office. It was dark but a light was burning over the taxi office and a street light at the intersection of Mill Street with another street about twenty feet distant from the parked taxi was burning. The taxicab motor was not running and its lights were not burning. There was thirteen or fourteen feet of paved street between the parked taxi and the curb on the opposite side of the street for use of traffic. An automobile approaching the parked taxi from the direction in which the taxi was headed could have been observed for a distance of at least two hundred feet. An ordinance of the town prevented automobiles from parking on the side of the street opposite the parked taxi. Apparently it had been the practice of drivers of taxicabs to park their cabs at or near the front of the taxi office, headed in either direction, depending upon the direction from which they had arrived.

Plaintiff had, on previous occasions, employed a taxi of defendant to drive him to his place of work at the Jamison Coal Company No. 9 Mine and was familiar with the manner in which the taxicabs were usually parked, as well as with the surrounding conditions described above. A short time before his injury the plaintiff announced to the taxi driver his destination and paid to the driver the fare to that destination. After receiving the fare the driver handed plaintiff a cover for the seat and

directed plaintiff to place the same upon the front seat of the cab where plaintiff was to ride. Plaintiff went around the rear of the taxi into Mill Street, opened the front door, placed the seat cover upon the front seat and, as he was straightening up to get into the cab, with his feet on the street and between the right front door and the body of the cab, a truck being driven by Charles Efaw struck the door of the cab, thereby throwing the plaintiff against the body of the cab and causing the injury. At the time of the injury the taxi driver was standing with his face toward the rear of the cab, collecting fares from other passengers who had been placed in the rear seat. No one saw the truck before it struck the door of the cab, but the driver of the taxi, upon hearing the noise of the impact, looked and saw the truck passing, ran after it, talked with the driver after the truck had stopped, and found the driver of the truck intoxicated.

The plaintiff testified that the taxi driver told him to get into the cab and that he "went in the road to get in the taxi and the driver threw the cover over to me and says 'Frank, put the seat cover on while I look up and down the road.' I got a hold of the seat cover and just as I got the seat cover put on and straightened out something hit; * * *". Plaintiff denies that he was ever warned by the defendant or his drivers to be careful when going around on the street side of the taxi. He admits that he did not look for approaching cars while placing the cover on the front seat. The driver of the taxi denies that he instructed the plaintiff how to enter the cab or to go around the cab and enter it from the street side, and says that plaintiff could have gotten into the front seat from the sidewalk. He further testifies to the effect that he had, on many prior occasions, warned the plaintiff about entering the cab from the center of the street; that he knew it was dangerous to enter the cab from the street side; that it was not customary for passengers to enter taxicabs from the street side, and that he had been parking the taxicab with its left side to the curb "right along".

The defendant Jenkins complains of the action of the

trial court in not instructing the jury to return a verdict for the defendant, for the reason that the plaintiff failed to prove negligence on the part of the defendant, and for the further reason that, admitting for the purpose of the question such negligence was proved, the plaintiff was guilty of contributory negligence as a matter of law. He also complains of the action of the trial court in giving to the jury plaintiff's instruction No. 4 and in refusing to give to the jury defendant's instructions Nos. 1, 2, 3 and 9.

Was there sufficient evidence of negligence of defendant to take the case to the jury? In considering this question we must keep in mind that plaintiff, at the time of the injury, was a passenger of a common carrier, and that the duties of a common carrier toward its passengers are different from those where that relationship does not exist. The rule, as applied in this jurisdiction, is stated in *Bennett v. Bartlett,* 110 W. Va. 478, 158 S. E. 712, to be:

> "It is now a settled rule that the owner of a motor bus operated as a common carrier, owes to passengers for hire the duty to exercise for their safety the highest degree of care which is consistent with the practical operation of the vehicle. *The highest degree of care,* however, is not an absolute but a relative phrase. It does not imply continuity of the most perfect human care, but the highest degree of care which a man of ordinary prudence would bestow under similar circumstances." *Kaufman* v. *Transit Company,* 117 W. Va. 591, 186 S. E. 712.

Also, we must look only to the evidence of plaintiff in considering this question and indulge all reasonable inferences that may be drawn therefrom. *Parsons* v. *Railroad,* 127 W. Va. 619, 34 S. E. 2d 334; *Fielder* v. *Cab Company,* 122 W. Va. 522, 11 S. E. 2d 115; *Nichols* v. *Mining Company,* 112 W. Va. 85, 163 S. E. 767. In view of the degree of care required of the defendant as a common carrier, the fact that his taxicab was parked on the wrong side of the street, and the testimony of the plaintiff to the effect that he was directed to enter the cab from the street and that the driver of the taxicab told him that he,

the driver, would "look up and down the road" while plaintiff placed the cover on the seat, and that the plaintiff was injured while doing so, and considering the other circumstances in the case, would, we think, make the question of negligence of defendant one for jury determination.

We are also of the opinion that the question of contributory negligence of the plaintiff was one for the jury. If the jury believed, as it could have done, that the driver of the taxicab directed plaintiff to enter the cab from the street and informed plaintiff that he, the driver, would keep watch for his safety while plaintiff placed the cover on the seat, then the jury would have had the right to say whether the plaintiff, under all the circumstances, was guilty of contributory negligence in not watching for approaching vehicles. In not doing so plaintiff would not be guilty of contributory negligence as a matter of law. If the defendant, by his employee, lulled plaintiff into a sense of security by making the statement, and failed to keep a proper lookout, as he represented he would do, the jury should be permitted to say whether plaintiff was guilty of contributory negligence in not looking or whether, under the circumstances, he was justified in relying upon the defendant to give him warning as to any approaching vehicle. The burden of proving contributory negligence was upon the defendant. "Upon conflicting testimony as to the facts, questions of negligence and contributory negligence are ordinarily for jury determination." *Nichols v. Mining Co.*, 116 W. Va. 163, 179 S. E. 70.

Plaintiff's instruction No. 4, given over the objection of defendant, reads:

"The Court instructs the jury that even if they believe from the evidence that the plaintiff was guilty of negligence and that that negligence may have contributed to the injury, yet, if the jury further believes from the evidence that the negligent position of said plaintiff was known to the defendants, Oscar Jenkins and his servant, Ernest Hanley, and that with such knowledge the injury

> to the plaintiff could then have been prevented by
> the use of care and diligence on the part of said
> defendants, Oscar Jenkins and his servant, Ernest
> Hanley, then the plaintiff's negligence will not
> excuse or relieve the defendant from liability."

This instruction is to the same effect as an instruction approved in the case of *Carrico* v. *Railway Company,* 39 W. Va. 86, 19 S. E. 571. The principal objection made to the giving of the instruction in the instant case is that it is a proper instruction only in a case where the last clear chance doctrine is applicable, and that the doctrine is not applicable here.

In the *Carrico* case damages were claimed for injuries to the arm of a passenger of the defendant railway company. It appears that the plaintiff was riding in the coach of the defendant with his arm lying out of the window when the coach came into contact with a pile of rock near the railway tracks, and that an employee of the company saw the rock pile and the danger to Carrico and signaled the brakeman, intending that the brakeman cause the train to be stopped to avoid the injury. From these facts it appeared probable that the employee who first discovered the danger might have had time to reach the plaintiff in time to have saved him from the injury. Therefore, that was a clear case for the application of the last clear chance doctrine. In *Juergens* v. *Front,* 111 W. Va. 670, 163 S. E. 618, the Court held:

> "The doctrine of the last clear chance implies a
> sufficient interval of time for both appreciation of
> the dangerous situation and effective effort to re-
> lieve it." *Milby* v. *Diggs,* 118 W. Va. 56, 189 S. E.
> 107; *Meyn* v. *Auto Company,* 118 W. Va. 545, 191
> S. E. 558.

The holding in the *Meyn* case "amplified" the rule announced in the case of *Smith* v. *Gould,* 110 W. Va. 579, 159 S. E. 53, 92 A. L. R. 28. A comprehensive note on the last clear chance doctrine may be found immediately following the case in the A. L. R. citation.

We think it unnecessary to cite further authority or to

further discuss the doctrine here. Consideration of the foregoing authorities will make it clear that the doctrine cannot be applied in the present case. The evidence does not show the existence of any dangerous situation immediately prior to the injury for a sufficient length of time for the defendant to have appreciated the danger, to have warned plaintiff of the danger, or to have taken effective action to have prevented the injury. In other words, there is no evidence tending to show that the defendant observed the danger to plaintiff from the approaching Efaw truck when the danger first arose, or could have warned the plaintiff in time for the plaintiff to have avoided the injury, or to have made other effective efforts to prevent the injury. Plaintiff contends further that since there was evidence that plaintiff was in a dangerous position while placing the seat cover, at the direction of defendant, and since the defendant could have warned the plaintiff of the danger from the approaching truck, had he kept a proper lookout, as he represented to plaintiff he would do, the defendant had a last clear chance to warn the plaintiff of the approaching truck in time for plaintiff to have avoided the injury. Such facts, however, do not make a case for the application of the last clear chance doctrine. They would simply tend to establish continuing negligence on the part of the defendant. We are not called upon to decide whether the doctrine should have been applied herein had the owner and driver of the Efaw truck not been dismissed from the case. It necessarily follows that the giving to the jury of plaintiff's instruction No. 4 constituted reversible error.

Defendant's instruction No. 1 was peremptory. It would have required the jury to return a verdict for the defendant. It was not error for the trial court to refuse it. As before indicated, there was sufficient evidence as to negligence of the defendant and as to contributory negligence of the plaintiff to let the case go to the jury on those questions.

Defendant's instruction No. 2 would have told the jury that negligence of the defendant should not be presumed;

that negligence must be proved by a preponderance of the evidence; that the burden of proving negligence was upon the plaintiff; and that the fact that plaintiff was injured did not raise a prima facie presumption of negligence. Defendant's instruction No. 3 would have told the jury that it was incumbent upon the plaintiff to establish, by a preponderance of the evidence, that the defendant owed the plaintiff a duty; that there was a negligent breach of that duty by the defendant, and that the injuries received by plaintiff resulted proximately from the breach of that duty. Defendant's instruction No. 9 would have told the jury that if both plaintiff and defendant were guilty of negligence, and that the negligence of both was concurrent and cooperated to produce the injury to plaintiff, that the plaintiff could not recover.

Apparently defendant's instructions 2, 3 and 9 were refused upon the theory that they ignored the last clear chance doctrine. They were not covered by other instructions given to the jury. They correctly state applicable principles of law, and would have told the jury no more than the defendant was entitled to have them know. Plaintiff suggests that the action of the trial court in refusing these three instructions was justified because they ignored the degree of care required of a common carrier. But it was not necessary that that phase of the case be covered by each instruction. That phase of the case was covered by plaintiff's instructions Nos. 1 and 6.

From what has been said it follows that the judgment of the trial court must be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*