LILLIE BELL BELCHER, *Administratrix*

*v.*

NORFOLK AND WESTERN RAILWAY COMPANY, *et al.*

(No. 10680)

Submitted April 12, 1955.  Decided May 24, 1955.

BROWNING, JUDGE, dissenting.

*Wade H. Ballard, II, Leon P. Miller,* for plaintiff in error.

*J. Strother Crockett, Crockett & Tutwiler,* for defendants in error.

LOVINS, PRESIDENT:

This action was brought in the Circuit Court of Mc-Dowell County by Lillie Bell Belcher, Administratrix of the Estate of Garrett Hiram Belcher against the Norfolk and Western Railway Company and G. D. Spangler, to recover damages for the death of her husband, caused by a railway crossing accident which occurred on December 14, 1952.

The plaintiff introduced proof and rested her case. At that time the defendant moved to strike the evidence from the consideration of the jury and to direct a verdict for the defendant. This motion was overruled. The defendants then introduced their proof and rested their case and again moved the court to strike the evidence and direct a verdict for the defendants which motion was likewise overruled.

The trial court then submitted the case to the jury, which deliberated for approximately four hours and reported their inability to agree. Whereupon, the court called the jury back into court and directed that it find a verdict for the defendants. In accordance with such direction, a verdict was returned for the defendants, and after overruling a motion to set aside such verdict, judgment was rendered thereon. This writ of error is prosecuted to such judgment.

There are several basic questions presented by this record: (a) Were the defendants guilty of negligence? (b) Was the decedent guilty of contributory negligence? (c) Do the facts in this case permit the application of the doctrine of last clear chance? A decision of these questions will dispose of the case on the present record, although there are other assignments of error made by the

plaintiff relative to the refusal and giving of instructions and the rejection and admission of certain evidence.

The accident occurred about 11:30 A.M. on the date heretofore mentioned at the village of Big Four in McDowell County, West Virginia, on a road crossing of the main tracks of the Norfolk and Western Railway Company. There was a slight snow on the ground at the scene of the accident. The railway tracks are straight for approximately 1650 feet, with a down grade of .25 of 1%, in the direction from which the train approached. On the north side of the tracks, there were several buildings; on the south side there were other buildings, mainly used as residences, as well as a coal tipple.

The automobile was a four door sedan driven by the decedent's son, who was also killed in the accident. The decedent was riding on the right side of the automobile in the front seat. Another passenger was sitting between the decedent and the driver. They drove onto the crossing from the north side and for some reason the motor of the automobile stopped. While the driver of the automobile was attempting to start the motor by pressing on the starter, the automobile was struck by corporate defendant's passenger train number 15, moving in a westerly direction. The automobile was thrown to one side of the tracks, caught by the rear by the train and dragged some 300 feet. The train was stopped at approximately 600 feet. It consisted of a locomotive and a number of cars and weighed approximately 1,112 tons.

The track over which the train passed was straight as above noted for a distance of approximately 1650 feet.

The engineer of the train, likewise a defendant, testified that the speed indicator on the locomotive he was driving showed that the train was traveling 40 miles per hour.

The witnesses for the plaintiff testified that they did not see the train approach. Several witnesses testified that no whistle was blown nor bell rung. On the other hand, the defendants' witnesses testified that they were keeping

a lookout and that the automobile was driven onto the crossing too close to permit the train to be stopped in time to avoid the accident. There was some proof on the part of the plaintiff that the engineer of the locomotive was not looking ahead, although the engineer testified to the contrary. The fireman, engineer and several other persons testified that the whistle was blown and the bell rung before they reached the crossing and that a whistle post was located 800 feet east of the crossing.

The accident resulted in the death of Garrett Hiram Belcher, the decedent, as well as the death of his son, James Cecil Belcher, as above stated, who was the driver of the automobile. William Edward Lester, who was likewise riding in the front seat, in the middle, was injured. Two small boys riding in the rear of the automobile were not injured.

It is contended by the plaintiff that there was a conflict of testimony, with respect to the ringing of the bell and blowing of the whistle; that there is likewise conflict as to how long the automobile was on the crossing before the accident occurred. The witnesses for the plaintiff say that it was on the crossing from 28 to 30 seconds before the train struck it. Some of the witnesses for the plaintiff say that the automobile was not on the crossing until the locomotive was between 200 and 150 feet from the crossing. The trial court was of the opinion that the plaintiff was contributorily negligent and based his direction to the jury to find a verdict for defendant on that opinion.

The record in this case has been examined with care. In this case, involving the law of railroad crossings, we first should determine the character of the crossing where the accident occurred, in order to ascertain the degree of care, if any, owed by the defendant to the plaintiff.

In *Huff* v. *Chesapeake & Ohio R'y.*, 48 W. Va. 45, 35 S. E. 866, this Court held that a railroad company was not liable to a person using a railroad track for his own convenience elsewhere than at a public crossing and that the statute did not require the blowing of a whistle or ringing of a

bell to apprise such person of the approach of the train. The statute requires warning signals at a place used as a crossing, though there is no formal order of dedication or acceptance of dedication, or the establishment or recognition of a crossing by municipal council. *Ray* v. *Ches. & Ohio Railway Co.*, 57 W. Va. 333, 50 S. E. 413. *Melton* v. *Railroad*, 64 W. Va. 168, 61 S. E. 29, follows *Huff* v. *Chesapeake & Ohio R'y. supra*, and holds that there is no liability on a defendant railway company in the absence of gross and wanton negligence. Another case, *Melton* v. *Railway Co.*, 71 W. Va. 701, 78 S. E. 369, in substance holds that where there is an invitation to the public to use a crossing and it is so used, the employees should be cognizant of such use and that the continued use by the public amounts to an invitation of such use and imposes upon a railway company the same degree of care as that required at a public crossing. See *Jones* v. *Railway Co.*, 74 W. Va. 666, 669, 83 S. E. 54. " "* * * In order to impose on a railway company the duty to treat a place as a public crossing, those who use it as a crossing must do so under legal right or at the invitation of the company. Mere license or permission to cross the tracks of a railway company is not equivalent to an invitation' ". *Ross* v. *Railway Co.*, 76 W. Va. 197, 202, 85 S. E. 180. "A railway company's invitation to the public to cross the railroad at a place not a public crossing charges the company with the same degree of care as the law imposes at a public crossing." *Stike* v. *Railway Co.*, 114 W. Va. 832, 174 S. E. 418. See *Daugherty* v. *Railroad Co.*, 135 W. Va. 688, 707, 64 S. E. 2d 231, wherein this Court distinguishes between a farm crossing and a public crossing. In 3, Elliott on Railroads, Third Edition, § 1620, the writer distinguishes private or farm crossings from public crossings. An interesting discussion of the care required on the part of a railroad company at crossings used by the public will be found in 3, Elliott on Railroads, § 1636 et seq. Code, 31-2-8, requires that a bell or steam whistle be placed on a locomotive engine and that the same be "rung or whistled by the engineer or fireman, at a distance of at least sixty rods from the place where the railroad crosses any public

street or highway, and be kept ringing or whistling for a time sufficient to give due notice of the approach of such train before such street or highway is reached, * * *."

The record herein does not show any formal dedication. The exhibits filed by both plaintiff and defendants do not show the existence of any warning board at the crossing where the accident occurred. But the record does show that the railway company had used some kind of material to raise the road surface and make it flush with the top of the rails.

The fireman, who was a witness for the defendant, testified that there is a whistling post east of the crossing. It is also testified by several witnesses that the crossing where the accident occurred had been used for a number of years; some say thirty-five years and some say eight years, by persons desiring to go from the public road to residences on the south side of the railroad tracks. From this, we conclude that the defendant owed to the plaintiff the same care that it would have owed had the crossing been a formally designated public crossing.

Coming to the inquiry whether the defendant failed to perform any legal duty they owed to the plaintiff's decedent. It is shown by the record that there is a conflict in the testimony introduced by the plaintiff and that introduced by the defendants, but the court having directed a verdict for the defendants, we must treat the evidence introduced by the plaintiff as true, together with all facts favorable to the plaintiff which may be inferred from such evidence. *Nichols* v. *Coal Co.,* 112 W. Va. 85, 100 S. E. 868; *Hambrick* v. *Spalding,* 116 W. Va. 235, 179 S. E. 807; *Fielder* v. *Cab Company,* 122 W. Va. 522, 11 S. E. 2d 115; *Wilson* v. *Transit Co.,* 126 W. Va. 943, 30 S. E. 2d 749; *Webb* v. *Harrison,* 127 W. Va. 124, 31 S. E. 2d 686; *Parsons* v. *Railroad Co.,* 127 W. Va. 619, 34 S. E. 2d 334; *Reed* v. *Janutolo,* 129 W. Va. 563, 565, 42 S. E. 2d 16; *Stokey* v. *Railroad,* 132 W. Va. 771, 55 S. E. 2d 102; *Laphew* v. *Bus Lines,* 133 W. Va. 291, 55 S. E. 2d 881; *Perry* v. *Scott,* 134 W. Va. 380, 59 S. E. 2d 652; *Frampton* v. *Consolidated Bus Lines,* 134 W. Va. 815, 62 S. E. 2d 126; *Constr. Co.* v.

*Coal Co.*, 135 W. Va. 656, 65 S. E. 2d 94; *Homes* v. *Power Co.*, 136 W. Va. 877, 69 S. E. 2d 131. Treating that evidence in that manner for the purpose of this opinion and notwithstanding the conflict, we are required to say that the bell was not rung nor any whistle blown, as required by the statute, and that the engineer of the locomotive was not keeping a lookout for the automobile in which the plaintiff was riding.

There being a conflict in the evidence on the question of primary negligence on the part of the plaintiff and sufficient evidence to be submitted to the jury, and no fact or principle of law barring a recovery, we think, without considering other questions hereafter mentioned, that the court erred in directing a verdict in favor of the defendant.

But, the defendant argues that the plaintiff was contributorily negligent as a matter of law.

It is to be noted at the outset of a discussion on the question of contributory negligence that the decedent was not driving the automobile in which he was riding and in which he lost his life. His son was driving. Notwithstanding that the son was driving the automobile and the decedent was riding therein, there is no showing in this record of a joint enterprise, and hence, the negligence, if any, of the driver of the automobile is not imputable to the decedent. *Jameson* v. *Norfolk & Western Railway Co.*, 97 W. Va. 119, 122 S. E. 491; *Jones* v. *Railway Co.*, 115 W. Va. 665, 177 S. E. 621; *Parsons* v. *Railroad Co., supra; Tawney* v. *Kirkhart,* 130 W. Va. 550, 44 S. E. 2d 634; *Darling* v. *Railroad Co.,* 136 W. Va. 303, 69 S. E. 2d 139. True, the decedent knew or should have known that the automobile in which he was riding was approaching a railroad grade crossing which is ordinarily a place of danger, and it was his duty to exercise reasonable care for his own safety and "*** look effectively for the purpose of observing an approaching railroad train." *Darling* v. *Railroad Co., supra.* See *Robinson* v. *Railway Co.,* 90 W. Va. 411, 110 S. E. 870; *Beyel* v. *Newport News & M. V. R'd. Co.,* 34 W. Va. 538, 12 S. E. 532. The record is some-

what uncertain whether the decedent knew or should have known that train No. 15, the passenger train which struck the automobile, causing his death, was due about the time of the accident, which situation, if existent, imposed upon him a duty to look for the train. But in the absence of proof to the contrary, it is to be assumed that the decedent took the necessary steps for his safety. See *Morris* v. *Railroad Co.,* 107 W. Va. 97, 147 S. E. 547.

There is no proof in the record whether decedent looked or did not look. That leaves the contributory negligence, if any, of the plaintiff's decedent, a question for the jury. The physical facts of this accident seem to indicate that the automobile was driven onto the crossing immediately before the arrival of the train at that point, but the surviving passenger riding on the front seat of the automobile testified that they were on the crossing from 28 to 30 seconds. That fact alone would seem to militate against any recovery of damages. The lapse of time the automobile was stalled on the crossing would probably have given the decedent an opportunity to abandon the automobile and avoid his fatal injury. But that is a question the jury had a duty to pass upon.

The plaintiff contends that the doctrine of last clear chance applies to this case. It is a general rule that in an action of tort, though the negligence of a defendant be shown, if the plaintiff was contributorily negligent and such contributory negligence contributed to or proximately caused the injury the plaintiff is barred of recovery.

The doctrine of last clear chance is an exception to that rule and has been frequently stated and discussed by this Court. In *Lynch* v. *Alderton,* 124 W. Va. 446, 20 S. E. 2d 657, the doctrine is defined as follows:

"Recovery by a plaintiff, under the doctrine of the last clear chance, can only be had where primary negligence on the part of the defendant is shown, coupled with such contributory or concurrent negligence of the plaintiff as would otherwise bar recovery; in such circumstances, recovery may still be had against a defendant,

where and only where such defendant, with knowledge of, or in circumstances where, by the exercise of reasonable prudence, he should have knowledge of the plaintiff's peril, his inability to extricate himself therefrom, or that he was apparently oblivious of his danger, and then fails to exercise reasonable care in the surrounding circumstances to avoid injury to the plaintiff; or where a negligent plaintiff, in a position of peril, can escape therefrom, but the defendant actually saw the plaintiff's peril in time to avert his injury and failed to take steps necessary to do so."

The quotation immediately preceding is an elaboration of the same principle stated in *McLeod* v. *Laundry,* 106 W. Va. 361, 145 S. E. 756. A plaintiff relying upon the doctrine of last clear chance must prove by a preponderance of the evidence that the defendant could have avoided the injury by the use of ordinary care after the actual or imputed knowledge of defendant of plaintiff's peril. *Waller* v. *Railway Co.,* 108 W. Va. 576, 152 S. E. 13.

In *Smith* v. *Gould,* 110 W. Va. 579, 159 S. E. 53, the first point of the syllabus omits direct reference to imputed knowledge of defendant as to plaintiff's peril. In *Juergens* v. *Front,* 111 W. Va. 670, 163 S. E. 618; *Emery* v. *Monongahela,* 111 W. Va. 699, 163 S. E. 620 and *Isgan* v. *Jenkins,* 134 W. Va. 400, 59 S. E. 2d 689, the principle was further discussed and applied. The fourth point of the syllabus in *Meyne* v. *Auto Co.,* 118 W. Va. 545, 191 S. E. 558 reads as follows: "Syllabus one of *Smith* v. *Gould,* 110 W. Va. 579, 159 S. E. 53, 92 A. L. R. 28, amplified. The last sentence of that point of the syllabus should be taken to mean that a negligent plaintiff, oblivious of impending danger, may nevertheless recover for injuries, where the defendant knew of the plaintiff's situation, and, under the circumstances, in the exercise of reasonable care, should have realized the plaintiff's peril, and, on such realization, could have avoided the injury." Several cases decided by this Court are adverted to in the opinion in *Weddle* v. *Railway Co.,* 125 W. Va. 41, 47, 22 S. E. 2d 698.

The principle of the last clear chance doctrine has no application to the factual situation shown in the instant

case. One of the surviving passengers in the automobile testified that the automobile was on the crossing from 28 to 30 seconds. It is an unusual coincidence that 28 or 30 seconds is practically the time it would require for the train at a speed of 40 miles per hour to travel from the point of sight to the place of the accident. If that be true, the engineer of the corporate defendant's train, on seeing the automobile on the crossing, could assume that the automobile would be moved from the place of peril, or the passengers therein would remove their persons to a place of safety. He was not required however to assume that the automobile and passengers therein would remain on the crossing while he traveled the distance from the point of sight to the place of accident.

It cannot be said with any degree of certainty that the locomotive engineer knew or should have known that the decedent and his fellow passengers were oblivious of their danger. As it stated in the tenth headnote to *Moore* v. *Atlantic Coast Line R. Co.*, (N. C.) 158 S. E. 556: "If occupants of automobile negligently awaited result when motor stalled on railroad crossing, their negligence, concurring with railroad's to last moment, would eliminate last clear chance doctrine."

On the contrary, if the testimony adduced by the defendant is correct, that the automobile came onto the crossing about 150 to 200 feet ahead of the onrushing locomotive, the engineer did not have time to take effective measures to avoid injury. See *Keller* v. *N. & W. Ry. Co.*, 109 W. Va. 522, 156 S. E. 50. In the case of *Nehring* v. *Connecticut Co.*, (Conn.) 84 Atl. 301, the doctrine of last clear chance is discussed from the standpoint of proximate cause and the opinion is very instructive.

For statement of the same rule as to defendant's knowledge and appreciation of plaintiff's peril, see 55 C. J. S., Negligence, §137, paragraph d.

In the Annotation to *Smith* v. *Gould, supra,* appearing in 92 A. L. R. at page 47 et seq., the doctrine is classified as to facts as follows:

1. "danger actually discovered by defendant; injured person physically unable to escape, 2. danger actually discovered by defendant; injured person physically able to escape, 3. danger not actually discovered by defendant but ought to have been; injured person physically unable to escape, 4. danger not actually discovered by defendant but ought to have been; injured person physically able to escape, \*\*\*". Bearing in mind the citations and discussion contained in the Annotation, we think that the factual situation disclosed by this record comes nearest to the fourth class above stated.

In accordance with the foregoing, the principles of the last clear chance doctrine are not applicable to the instant case.

The plaintiff has requested us to pass on the questions of whether the court erred in refusing to give certain instructions tendered by the plaintiff and in giving three instructions tendered by the defendant. We do not think the decision in the instant case calls for discussion of those questions because to do so would be merely expressing dicta. Neither do we think we should pass on the admissibility or inadmissibility of evidence submitted and refused relative to the alleged retarded amnesia of William Edward Lester, a person riding on the front seat of the automobile who was injured, but recovered.

Bearing in mind the question of defendants' primary negligence and the decedent's alleged contributory negligence, we are of opinion that this case should have been submitted to a jury with proper instructions.

In accordance with the principles enunciated in this opinion, the judgment of the trial court is reversed, the verdict is set aside and the plaintiff is awarded a new trial.

*Reversed; verdict set aside;*
*new trial awarded.*

BROWNING, JUDGE, dissenting:

I respectfully dissent. I agree with the holding of the Court that there was sufficient evidence of primary neg-

ligence to take the case to the jury. I also agree that the doctrine of last clear chance is not applicable upon the facts presented by this record. The elimination of the last clear chance doctrine, however, in my opinion, clearly establishes a situation wherein the decedent was negligent as a matter of law; that his negligence continued to the moment of the collision between the automobile and the train; and contributed proximately to the injury which caused decedent's death.

The evidence of the plaintiff shows that the automobile in which the deceased was riding approached the crossing at a time when no train was visible in either direction and that the automobile stalled between the rails of the first, or west bound, track, and remained there for a period of 28 to 30 seconds. The time was approximately 11:00 A. M., and the day was clear. To the east, the occupants of this automobile had a clear view of the railway for a distance of at least 1,652 feet. The deceased was sitting in the front seat of the automobile nearest the door. The deceased was a man of mature years who had lived for a long time in McDowell County, through which the main line of the Norfolk & Western Railway Company runs. The decedent should have known that the automobile in which he was seated was upon a track of that railroad, frequently used by its trains. It became his duty, in the exercise of reasonable safety, to look and listen effectively for the purpose of ascertaining whether a train was approaching. If he had done so, there was nothing to prevent his seeing the approaching train. He could have provided for his own safety by the simple process of opening the door of the automobile and stepping a few feet to safety. The failure of the decedent to take these simple steps for his safety is not the conduct of a person of ordinary prudence under like circumstances, and, in my opinion, constitutes negligence, barring recovery by the plaintiff.

One may not wantonly project himself into a dangerous situation, no matter how serious the derelictions of the other party. The law ordinarily charges a person of unimpaired vision with seeing an object which, if he had

used his senses in the nature of things, he must have seen. The duty to maintain a lookout involves not only the physical act of looking, but also a reasonably prudent reaction to whatever might be seen. One will not be heard to say that he looked but did not see, when a situation is open and obvious.

I would affirm the action of the trial court in directing the jury to return a verdict for the defendants.